URANEY WILKINSON'S HEIRS v. LIVINGSTON WILKINSON AND OTHERS.

Land acquired by the husband, the head of a family, under the Act of January 4th, 1839, formed a part of the community.

Where the husband had obtained a conditional certificate under the Act of January 4th, 1839, and had the land in controversy surveyed thereon during the lifetime of the wife, and the latter lived three years after the issue of the conditional certificate, so that before her death the husband became entitled to the grant of the unconditional, it was held that the wife had acquired such an interest in the land, as descended to her heirs, although the unconditional certificate and patent were not obtained until several years after the wife's death.

Upon the naked fact that the land sued for by the heirs of the wife, was community property at the time of her decease, the heirs are entitled to recover; if there is any equity, to defeat such recovery, it must be set up by the defendant.

Error from Washington. Tried below before the Hon. R. E. B. Baylor.

Suit by the children, and heirs, of Uraney Wilkinson, against Livingston Wilkinson, William W. Buster, John Estis, Valentine Hoffman, and William Bock, to recover their interest in 640 acres of land, and for a partition.

The cause was submitted to the Court, without a jury, upon

the following statement of facts : Livingston Wilkinson and Uraney, his wife, the parents of the plaintiffs, immigrated to Texas in the year 1839 ; and on the 21st of December of the same year, a conditional certificate for 640 acres of land was issued by the Board of Land Commissioners of Washington county, to said Livingston, agreeably to the provisions of the Act passed January 4th, 1839. The land claimed was surveyed by virtue of said certificate in 1841. In the month of January, 1843, the said Uraney died. No letters of administration were granted on her estate. An unconditional certificate was issued by said Board of Land Commissioners to said Livingston, on the 29th of January, 1845, for 640 acres, which certificate was located and surveyed upon the vacant public domain, and a patent issued upon the same on the 19th of January, 1846. The land was in Washington county. On the 30th of March, 1846, the said Livingston conveyed the whole tract to Wayne S. Bishop, who conveyed to his co-defendants. There were five children, plaintiffs, the two elder being ten and nine years of age at the time of their mother's death ; the ages of the others were not stated, but it was stated that they were minors when the suit was commenced, which was the 18th September, 1856. It was agreed that the said Livingston " raised the children of himself and Uraney, his wife, who were soon able to contribute to some extent for their own support." In the deed to Bishop the said Livingston was joined by Mahala, his wife, he having married a second time. There was an agreement as to the terms of partition, having regard to defendant's improvements, in case judgment should go for the plaintiffs.

*Sayles*, for plaintiff in error. Two questions are presented by the " agreed case."

1st. Does the land acquired by the husband, the head of a family under the Act of January 4th, 1839, Art. 1924, H. D., form a part of the community property ?

2d. Had the wife, in the present case, acquired such an interest in the land in controversy, that any estate therein descended to her heirs ?

Had not the first question raised in the argument of the case in the District Court below, been the subject of a doubt in the mind of the learned Judge who presided, I should not have deemed it worthy of notice. After the full examination given

to the subject of onerous and lucrative titles in the case of Yates v. Houston, 3 Tex. R. 433, further discussion would be useless, and I shall content myself by showing the analogies existing between titles issued under the Colonization Law of 1823 and under the Act in question. (Mr. Sayles here detailed the particulars, which, he argued, rendered the titles in both cases alike onerous.)

II. The rights of the wife or of heirs are not prejudiced by the failure of the husband, to procure the unconditional certificate at the time he was authorized to do so by law.

It will follow as a corollary from the case of Stramler v. Coe, 15 Tex. R. 217, that the heirs of the wife may claim the benefit of the acts of the husband done towards the completion of a contract begun in the lifetime of their mother.

The conditional certificate was issued and the conditions attached to the grant were performed in the lifetime of the wife. If she had not the legal, she had at least the equitable title. The unconditional certificate was not the title, but the evidence of title—proof that the conditions preceding the grant had been performed. That, when issued, related back to the day of performance, and was evidence that the title was complete. Had the proper officers refused to issue the unconditional certificate, the parties could have compelled them to issue it. (Goodlett v. Smithers, 5 Port. 245; McConnell v. Millcox, 1 Scam. 1; Ohio Cond. R. 492; 15 La. R. 1; 1 Marsh. C. C. R. 109; Hoofnagle v. Anderson, 7 Wheaton, R. 212.)

In the case of Webb v. Webb, 15 Tex. R. 274, nothing had been done by the husband, before the dissolution of the marriage, entitling him to demand the title that subsequently issued; in the present case, everything had been done, which the law required. The conditions attached to the grants under the law of 1825, were conditions subsequent and could not be performed prior to the issuance of the final title. The conditions attached to grants under the law of 1839, were conditions precedent, and in the present case, were fully performed in the lifetime of the wife, and raised an equity in favor of the heirs of the wife, which attached to the land.

No equities have been set up in this case by the vendees of the husband; nor has it been alleged that the property was disposed of, to pay the debts of the community; there being no evidence that any debts ever existed. The presumption is that none ever did exist. (Duncan v. Rawls, 16 Tex. R. 478.)

*J. E. Shepard*, for defendants in error.   We consider the case of Webb v. Webb, 15 Tex. R. 274, as decisive of this question. The land was a part of the public domain at the time of her death; it was yet under the control of the political authorities, who might or might not complete the grant at pleasure.   And the fact of a survey in this case could give no greater right than the fact of selection did in the case of Webb v. Webb.

As to whether this land was community between Wilkinson and wife, it is submitted that this title is not a concession but a donation, and is not held by onerous title. (Frique v. Hopkins, 3 La. Cond. R., N. S. 274; Gaxosa v. Garcia, 2 La. Cond. R., N. S. 474.)   The case of Yates v. Houston only apparently conflicts with the above cases, and more in the reasoning than in the law.

The law under which this title issued, (Hart. Dig. Art. 1924,) is entitled an Act to extend to emigrants a donation of land. The donation is to free white persons who are heads of families. A wife was not necessary to the procurement of title, and it would have been extended to Wilkinson with his family of children, as well without as with his wife.   But the statute is yet more specific.   "The condition of the grant shall be, that both grantee and his or her family shall remain in the Republic and do and perform any and all duties required of other citizens, for the term of three years; after which time he or *his legal representatives* shall receive from the Government an unconditional deed for said grant of land."

Let us suppose that L. Wilkinson had died instead of his wife, to whom would the title have issued ? unquestionably to his children as his legal representatives.   Would it have been then subject to the wife's interest of community ?   If so, the law would be plainly violated, for neither the head of the family nor his legal representatives would receive a donation of 640 acres of land.

*J. D. & D. C. Giddings*, also for defendants, in addition to the points made in Mr. Shepard's brief, cited Edwards v. Beavers, decided at Tyler, 1857, and filed an argument for a rehearing, which was refused.   The points made by the argument for rehearing were:—

1st.   That there was no allegation in the petition, of the survey in 1841, but that the allegation was " that an unconditional certificate was issued by said Board of Land Commissioners on the 29th of January, 1845, for 640 acres, which certificate was

located and surveyed upon the vacant public domain and a patent issued upon the same on the 19th January, 1846;" and that proof of such fact, as repeatedly held by this Court, could not therefore avail the plaintiffs. (The allegation is correctly stated; but note previous decisions of this Court, where the cause is submitted upon a statement of facts.—REPS.)

2d. That the wife had not a vested interest, that could descend to her heirs; that the land was not *acquired* at the time of her death; that the greater portion of the expense was incurred after her death; and that after the wife's death, the husband was entitled to the same grant as the head of a family composed of himself and children. (Webb v. Webb, 15 Tex. R. 274; Edwards v. Beavers, Tyler, 1857; Hart. Dig. Art. 2104.) The case of Webb v. Webb, was stronger for the wife than this; a selection of land, under the conditions which entitled the parties to a grant, was a more perfect act of appropriation, than the survey of a conditional certificate; and there the controversy was between the husband and children; here it is between the children and innocent purchasers.

3d. Admitting that the husband took as trustee for part of the land, the defendants are innocent purchasers, and not affected by a trust of which they had no notice. (The petition alleged the particulars of plaintiffs' title, and there was no plea of innocent purchaser; but the petition also alleged trespass, and was indorsed to the effect that it was brought as well to try title as for damages; and defendants pleaded not guilty.—REPS.) The husband having married another wife, there was nothing to put defendants on their guard against the latent equity.

4th. The presumption is the land was sold by the father for the support of these children. (See Stramler v. Coe, 15 Tex. R. 214.) In view of the relations of the parties to the facts, the burden of proof should fall upon the plaintiffs.

5th. The emigration, residence and death of the wife in the country, did not entitle the husband to land; and if no children had been left, he could only have obtained the quantity assigned to single men. (Webb v. Webb, 15 Tex. R. 217; Hart. Dig. Art. 2051.)

6th. Nothing can be claimed from the principle that the wife shall not suffer on account of the laches of the husband, because he was not guilty of any laches at her death; there had not been time, or barely time with the utmost diligence, to procure the unconditional certificate before her death.

16

7th. If this application should be refused, defendants ask that the judgment of reversal be reformed so as to remand the cause for a new trial, in order to give the defendants an opportunity to prove that the proceeds of the land were applied to the payment of community debts and the support of the plaintiff.

HEMPHILL, CH. J. Two questions arise in this case,

1st. Does the land acquired by the husband, the head of a family, under the Act of January 4th, 1839, form a part of the community property ?

2. Had the wife, in the present case, acquired such an interest in the land in controversy, as that at her death an estate therein descended to her heirs?

Under the laws of Spain, in force at the date of this Act, and under our present laws, the partnership between husband and wife in property is not, as it is in several countries of Europe, a universal partnership. It did not embrace property owned by the parties before marriage, nor all of their future acquisitions, but those only which were attained by the industry, the labor or negotiation of one or both of the parties; those in fact, which arose *ex questu*, or by onerous title; and not those by lucrative title, such as a legacy, inheritance or donation made separately to one of the partners in matrimony. (See Commentaries of LLamas on 16th Law of Toro.) These last acquisitions are not the fruit of the joint or several labor or diligence of the parties, but arise from the personal merits of the donee.

It is admitted that mere donations are the property of the partner to whom the gift is made. But among commentators there exists quite a conflict of opinion as to whether donations which are remuneratory in their character, though made to the husband, should not be esteemed a portion of the gains of the marriage. This conflict and the opinions of various authors may be seen at large in the Commentary of LLamas on the 77th Law of Toro. It will not be necessary to canvass the nice distinctions suggested by the learning and acuteness of jurists on this subject.

In Yates v. Houston, (3 Tex. R. 433,) we have decided that grants of land made to married men, under the colonization law of 1823, were community property ; and, as such, subject to division between the surviving and the heirs of the deceased partners of the marriage; and there is no such marked distinction between the grants under the colonization law of 1823, and those under

the Act of 1839, as to operate an entire change in the character of the right in the property, making the first community, and the last separate estate. By the law of 1823, the Commissioner's fees, office fees, stamp paper, surveying fees, &c., were required to be paid before the issue of the grant; and to the grant was attached also the onerous condition of cultivating the land within two years. Under the Act of 1839, the head of a family was entitled to his grant on paying the surveying fees and fees of office, and on the further condition that both the grantee and his family should remain and reside permanently within the Republic, and do and perform any and all duties required of other citizens, for the term of three years. The advances of money in the shape of fees from the colonist or emigrant amounted to nearly the same under both laws; and though the emigrant, under the Act of 1839, was not required to settle upon and cultivate the particular land granted, as was the colonist under the law of 1823, yet the duties exacted of him were nearly tantamount in their character. The object of both laws was the same : to reclaim the wilderness from the savage, and fill the country with a hardy, industrious, intelligent and reputable population. Under the first law, the colonist was required to cultivate the land granted; under the latter, the grantee was required to perform all the duties of citizens, for three years. And what were these duties at and after the passage of the Act of 1839 ? The country was then at war with a powerful nation. Her whole frontier, from San Antonio to Red river, was desolated by continuous inroads of barbarous savages. Citizens who remained there were compelled to resort to block-houses for protection. The husband was liable at any time to be called out to repel incursions, or march on distant expeditions, furnished not by the Government with supplies of food, clothing and ammunition, but out of the scanty means of the joint labors and toils of himself and wife; and devolving upon the latter, during his absence, the management, protection and support of herself and family; and thus, of necessity, exposing her not only to the toils and privations, but to the dangers and cruelties of savage warfare.

Can it be said that the grant was in the nature of a remuneration for the personal merit of the husband alone? This is repugnant to the facts of the case and to common sense. Without marriage, as a single man, he would have been entitled to but three hundred and twenty acres. Does the mere fact of his marriage give him, for his isolated, individual merits, three hun-

dred and twenty acres more, his wife being regarded as a mere cipher, possessing no merit, and not at all within the scope of the bounty of the Government? It is a fundamental principle of our law, and always has been, and I presume always will be, that marriage does not divest the wife of her rights in property, and that in the acquisitions made after marriage both partners, with some exceptions, are entitled to an equal share. Is it to be supposed, on principle, that the Government whose laws so sternly protect the equal rights of the wife, would grant to a husband twice, and under former laws three or four times, as much land as to a single man, and this merely with a view to the separate benefit of the husband, without any regard whatever to the wife, as the meritorious consideration of the grant? We think not. Such injustice, under a system which recognizes and secures the rights of married women, would be too palpable to receive the sanction of a Court, unless such were the plain meaning of the law. Grants of land from the Government have, so far as we have been able to ascertain the rule, under the ancient authorities in Texas and the adjacent provinces, been always regarded as common property between husband and wife. These donations we believe to have been intended for the joint benefit of the partners in matrimony. They were secured by their joint means, and, in effect, by their joint diligence and toils; and, as such, the land in this controversy must be regarded as community property; and the plaintiffs, the heirs of the deceased wife, are entitled to an equal share with the surviving father.

The second inquiry, whether any such right had vested in the wife in the land, as would descend to her heirs, must be answered in the affirmative.

The conditional certificate was issued and surveyed in the lifetime of the wife. She lived for three years after the issue of this certificate; and before her death, the husband was clearly entitled to the grant of the unconditional certificate. He had the control of the community; and her rights and those of her heirs, cannot be affected by his laches in applying for the certificate.

The case is clearly distinguishable from that of Webb v. Webb, in the 15th vol. Tex. R. In that case nothing had been done before the death of the wife, which would attach an equity, in favor of the heirs of the wife, upon the grant issued after her death to the husband. It was not shown that any legal step had been taken before her death, to secure the land or a title. We

are of opinion that the judgment be reversed, and that judgment be entered for the plaintiffs, and that the cause be remanded to the District Court for further proceedings in accordance with law and the agreement of the parties.

Reversed and reformed.