JOHN STOVER v. JOHN B. GARVIN, ADM'R.

To entitle a party who claims the benefits of the "Act to secure actual settlers "within the limits of the colony granted to Peters, commonly known as Peters' "colony, the land to which they are entitled, passed January 21, 1850," to maintain a right to a particular section, or half section, including his improvement, in preference to any other person, he must have had a subsisting settlement on the same, at the date of its passage.

A settlement on land within the colony, made prior to the passage of that act, will invest the settler with no rights under it, if he abandon the same; for he thereby forfeits the preference given him. Mere intention to return and resume his settlement, without the fact, is not sufficient.

See this case, for such acts of abandonment as would authorize third persons to infer that such was the fact; and see the opinion of the court, as to what acts would have been proper and sufficient, to have preserved whatever rights the settler might have claimed by virtue of his settlement.

The exclusion of testimony which could not have affected the verdict, will not authorize the reversal of the judgment.

As nothing short of the fact of settlement or improvement, subsisting in the use of the plaintiff, at the date of the Act of the 21st of January, 1850, would have been sufficient to entitle the plaintiff to recover, and mere proof of intention, unaccompanied by corresponding acts, was not sufficient, the exclusion of testimony in proof thereof was immaterial.

ERROR from Ellis. Tried before the Hon. Nat. M. Burford. This case has heretofore been before this court on appeal. (Benjamin Garvin's Adm'rs v. John Stover, 17 Tex. Rep. 292.) Suit for land in Peters' colony; and the controversy was on the priority of settlement; in which the main question was, whether the plaintiff in error, who was plaintiff in the court below, had or had not abandoned his first settlement, on which he claimed the right of preference. The plaintiff settled on the land in controversy in the year 1845, erected thereon a small cabin, and fenced and cultivated a field of three or four acres, where he remained with his family until the fall of 1847, when he left to go to Arkansas. He had with him, while on the place, a wife and children, whom he took with him. When he was about leaving, he put the place, and his property, under the care of Benjamin Garvin. The testimony also showed that he gave

instructions to Garvin to take care of his place, and to let no person go upon it, and that Garvin promised compliance. Also, that the plaintiff employed Garvin to gather and crib his corn, which he did; and he authorized Garvin to pay himself out of the corn for his trouble. When he was about leaving, he put his plows, wagon-wheels, &c., in his cabin, nailed it up, and told the defendant, that he was going to Arkansas to collect some money, and would be back, and live on the place, if he lived. Some time in the fall, after Stover was gone, Garvin told a witness, that he intended to move on Stover's place, and that he did not believe Stover would return; and he accordingly did move, during that fall, on the Stover place, but on a different part from that improved by Stover, and resided upon it until his death; and his family continued to reside upon it, up to the time of the trial. During the plaintiff's absence, his cabin and crib were destroyed by fire. Garvin lived about a half mile from Stover's cabin, on the same section of land.

It was proven, that in the summer of the year 1848, the plaintiff came back to the house of one of the witnesses, in Dallas county, (about six miles from the residence of Garvin,) and inquired if Garvin was on his place, and asked how he should proceed to put him off, or get the possession. He remained in the neighborhood two or three days. One of the witnesses saw him about a year afterwards, in Collin county. Three witnesses, neighbors of Garvin, testified that they did not see the plaintiff in 1848, nor did they see him again until 1850. It was proven, that the plaintiff was at Waxahatchie, in the spring of the year 1850, when Commissioner Ward was issuing certificates. Defendant introduced a transcript from the General Land Office, containing the certificate, survey, &c., of his claim to the land.

It was proven by documentary evidence, that Commissioner Ward issued a certificate to the plaintiff, on the 24th day of May, 1850, under the Act of 21st January, 1850, for six hundred and forty acres of land, within the limits of Peters' colony; which certificate recited the fact, that the land selected by

said colonist could not be therein designated, there being no map or field notes.

On the trial, the plaintiff offered to prove, that when he came to Baggets, in 1848, he said he was going to see Garvin, and started in that direction; that when he returned to Baggets, he said he was going to the counties of Collin and Grayson, to make money to prosecute a suit against Garvin. He also offered to prove his own declarations, made at the time of his departure and upon his return, in order to show his intentions in relation to his place of settlement. He also offered to introduce in evidence the record of a former trial, between himself and Benjamin Garvin, in the District Court of Navarro county; the record offered showed that the plaintiff in this suit brought an action against Benjamin Garvin, in Navarro county, alleging the fact that the land sued for was situate in what was Navarro county, but at the institution of that suit, (July 15th, 1850,) in the county of Ellis, then unorganized; the said suit was an action in form of trespass to try title, and was determined in Ellis county, at the April Term, 1852, in favor of the defendant. The suit was brought for the same tract of of land, according to the description in the petition, as that involved in this suit. To all of which several matters of evidence the defendant objected, and the objections to the same were sustained; to which rulings the plaintiff excepted.

*John M. Crockett* and *John J. Good*, for plaintiff in error.

*George F. Moore*, for defendant in error.

WHEELER, Ch. J. It is not perceived that the evidence differs in any respect which is material from that given upon a former trial; which was held insufficient, when the case was before the court on a former appeal, to entitle the plaintiff to a recovery. (17 Tex. Rep. 292.)

The difficulty which the plaintiff has to encounter in the maintenance of his claim is, that at the date of the passage of the

Act of the 21st of January, 1850, (Hart. Dig. 682,) he had not a subsisting settlement or improvement upon the land; consequently, the act gave him no right to claim this particular section, in preference to any other person.

Prior to the act of 1850, settlement upon the land was essential to give a colonist a right to land in Peters' colony. By that act, settlement within the limits of the colony gave a right to appropriate the quantity of land specified in the act. But to entitle the claimant to appropriate a particular section or half section, as the case might be, he must have had an improvement upon it. (Hart. Dig. Art. 2229.)

The plaintiff was not in a condition to avail himself of the benefit of the provision which entitled the colonist, in making his selection, to include his improvements. It is true, he had settled upon the land in controversy in 1845, and built a cabin and cultivated a small field. But in 1847, he left it, and went with his family to Arkansas, and never did return to and resume his settlement upon the land. He himself returned to the neighborhood in 1848, and probably visited the defendant, whom he had left in charge of his place, and some of his effects. But whatever may have been his intention in regard to resuming his settlement, he never did resume, or, so far as appears, attempt to resume it. Neither the defendant, nor any one else, could have prevented him, if he had seen proper. And, if he had resumed possession, within such reasonable time as to repel the presumption, arising from his absence, that he had relinquished his settlement, and abandoned the intention to return to it; if, having returned to it, he had continued its occupancy until the passage of the act of 1850, being then the oldest settler, his claim would have been preferred to that of the defendant. (Hart. Dig. Art. 2230.)

He may have intended, in 1848, to return and to resume his settlement, but the mere intention, without the fact, is not sufficient to constitute settlement. Nothing further appears to have been heard from him until after the passage of the act of 1850, providing a mode by which colonists could acquire a title to

Stover v. Garvin.

lands in Peters' colony. If he had not abandoned his settlement, he ought before this to have resumed it. His cabin had been burned down, and his former improvements had been destroyed, or had gone to waste. He cannot be said to have had, at that time, any subsisting use in any improvements upon the land. But he might have erected and occupied another cabin, and made other improvements. This he failed to do, and we think his long absence and inattention to his settlement, reasonably consistent with no other conclusion, than that he had finally relinquished his purpose of ever returning to and resuming the possession of it. At least, the defendant and others were fairly entitled to draw this inference from his conduct; and he can have no just cause to complain that, acting upon that supposition, the defendant did settle upon the section, and being the only settler at the adoption of the act of 1850, thereby acquired the right to appropriate it to himself.

In the view we have taken of the case, it will be seen that, in our opinion, the ruling of the court excluding certain evidence proposed by the plaintiff was immaterial. If the plaintiff had been permitted to prove all he proposed to prove, the conclusion must have been the same. Nothing short of the fact of a settlement or improvement, subsisting in the use of the plaintiff, at the date of the Act of the 21st of January, 1850, could entitle him to appropriate this land in preference to any other colonist. Mere proof of intention, unaccompanied by corresponding acts, was not sufficient. It is proper to say, that if, in our opinion, the evidence disclosed in the bills of exception was of a character to affect the verdict and judgment which ought to be rendered in the case, its rejection would have been erroneous. (1 Greenl. Ev. § 108.) But as it was not material, its exclusion will not authorize a reversal of the judgment.

We are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.