## M. CAUDLE AND OTHERS v. F. M. WELDEN.

1—The act of January 21, 1850, to secure actual settlers in Peters' colony (Paschal's Digest, Art. 828,) conferred no rights upon any persons except those who were, at the very time of the passage of that law, actual settlers and occupants of land within the colony, and whose possession had commenced before the 1st of July, 1848.

2—A husband and wife settled in 1844 on public land in Peters' colony. The wife died in 1847, leaving her husband and one child surviving her. In May, 1850, the husband, by virtue of the above cited act, obtained his certificate for 640 acres of land in the colony, and afterwards sold the land and assigned the certificate. Patent issued to the assignee, and his vendees were sued by the child of the original settlers for one-half of the land, which is claimed to be the community interest of the plaintiff's mother, vested in him by descent. *Held,* that under the act of January 21, 1850, above cited, the whole of the land accrued to the father of the plaintiff, and passed to his assignee; and that the mother of the plaintiff never had any interest in the land which could descend to her heir, the plaintiff.

3—The ordinance adopted with the constitution of 1845 (Pasch. Dig., Art. —,) has no bearing or effect on titles originating under the above cited act of January 21, 1850, to secure actual settlers in Peters' colony.

APPEAL from Denton. Tried below before the Hon. W. T. G. Weaver.

The facts are clearly stated in the opinion of the court.

*J. A. Carroll,* for the appellants.

*J. Bledsoe* and *Throckmorton & Brown,* for the appellee.

LINDSAY, J.—The pleadings and proof in this case exhibit the following state of facts, to wit: J. S. Welden and wife immigrated to Texas in 1844, and settled and improved a tract of land by building a cabin upon it, and inclosing and cultivating about seven acres, in Denton county, within the limits of Peters' colony. The wife died on the land during its occupancy by the settler, in the latter part of the year 1847, leaving

one child and the husband surviving. Under the act of the 21st of January, 1850, passed to secure "actual settlers" in that colony, the husband, on the 7th of May, 1850, obtained from the commissioner appointed by said act, a certificate for 640 acres, as the head of a family; and on the 18th of August, 1853, sold the land, and assigned the certificate to the vendor of the appellants; to which assignee the patent for the land was issued on the 5th of December, 1855. It thence passed by *mesne* conveyances to the appellants.

This suit was brought by the child of the deceased wife of J. S. Welden, for one moiety of the land, as community property. There was a verdict and judgment in favor of the child, and from that judgment this appeal was taken.

At what period of time did the *right* of the husband to this specific portion of the public domain begin? Certainly not until the act of the 21st of January, 1850, had been passed by the Legislature. And then the question as to whom that inchoate and equitable title to it belonged, was absolutely dependent upon the fact as to who was the "actual settler" upon it at the time of the passage of the act. The object and the policy of that law was to secure and protect "actual settlers"—those persons having *pedis possessio* of certain portions of the public land within the certain prescribed limits of the colony at the very moment when the act passed; provided, that possession had commenced prior to the 1st day of July, 1848, the period of limitation which had been fixed by the legislation of the republic for the completion of the colonial contracts with Peters and others. It was not intended to secure such rights to persons who might have settled within that boundary prior to the 1st day of July, 1848, as colonists, and who had abandoned the colony previous to the enactment of the 21st of January, 1850. Nor could the heirs or legal representatives claim such rights if they had abandoned the specific land, or the colony, and were not in possession at the date of the law instituting the *right*. The act of legislation was the beginning—the inception of the inchoate equitable title—which was still dependent

for its consummation into a complete legal and perfect title, upon certain *acts* and *conditions* of the *settler*. He was required to prove by his own oath, and the affidavit of two witnesses, that he had immigrated to Texas, and settled within the limits of the colony, prior to the 1st of July, 1848.

These were positive acts required of the settler by the statute. Besides, he was compelled to establish by proof the *condition* that he had since continued, and *still remained*, a settler in the colony, and upon the land, if he sought a specific appropriation. Thus, it is manifest, the beginning of the right was only coeval with the enactment of the law, in which the deceased wife could have no participation, because the marriage relation had been dissolved by her death before the law creating the right had been enacted.

There was no obligation upon the State to make such a provision for the benefit of actual settlers. The settler there, if he came in as a colonist, came by agreement and arrangement with the colonial contractors. The State had given full public notice, by its legislative acts and its contracts with the colonizing undertakers, of the terms and conditions upon which immigrants might acquire lands and citizenship in the republic. Such immigrants had no claims upon the government beyond what were indicated and declared in those enactments and contracts. Of them each immigrant had a right to avail himself, with a full knowledge that the establishment of his rights, as a colonist, was dependent upon the completion and full performance of the conditions and requirements of the contracts by the contractors with the State ; and that, if there should be a failure there, he must rely upon the generosity of the government for relief. It could not be claimed as a matter of right. Hence there was no obligation upon the State to extend the relief. In her wisdom, and in her policy, she deemed it best to do so. But it is of mere grace and favor to those who derive a benefit from this legislation. The conclusion here arrived at is sustained by the reasoning in a number of cases heretofore decided by this court, a collation and exam-

ination of which is unnecessary upon the present occasion. But in the case of Caucisi v. La Coste, 20 Tex., 269, the court more particularly gives a construction of the act of the 21st of January, 1850, which will be found not inconsistent with the view here taken. As adjudged also in the case of Stover v. Garvin, 22 Tex., 9, nothing less than the settlement, or improvement, subsisting in the *use* of the husband, *at the date* of the act of the 21st of January, 1850, would entitle *him* to claim and hold this specific portion of land. No right, therefore, could have accrued to the wife, whose death had occurred more than three years before the legal obligation to confer title had been assumed by the State.

The ordinance, adopted with the constitution of 1845, does not vary the conclusions of law upon the facts, as is supposed by the learned counsel for the appellee. The proviso in that ordinance for the protection of "actual settlers" under colony contracts, was predicated upon an anticipated decree, or sentence, of the nullity of all colony contracts, upon the institution of some legal proceeding against them, in which they might be declared unconstitutional, illegal and fraudulent. This investigation was never had. But, on the contrary, five years afterwards the political power, in the enactment of the law of the 21st of January, 1850, still recognized the Peters' colony contract as a subsisting contract, by the declaration in the 15th section, "that nothing herein contained shall be construed so as to place the contractors of said colony in a better or worse condition, in regard to the State of Texas, than they would be if this act had not been passed;" showing that in the judicial determination of the rights of parties to land within the defined limits of Peters' colony, the contracts were not to be ignored, notwithstanding the proviso in the ordinance of 1845. The ordinance has no force or effect in the present controversy. This land is certainly held under the act of 1850, and if the appellee has any claim, it is derived through that channel, from the certificate and grant made according to its provisions. The court is, however, satisfied

that the husband holds by legislative grant, made long after the death of the wife, and the land is not the property of the community.

The judgment is reversed and the cause dismissed.

Reversed and dismissed.