S. C. McReynolds et als. v. S. Bowlby et als.

(Case No. 3057.)

1. Peters' colony, land granted in — Separate property of the husband. — Land acquired by a surviving husband under an act of the legislature granting land to settlers in Peters' colony, passed after the death of the wife, is the separate property of the husband, and the children of the deceased wife have no interest in it, the wife having died before she or they possessed either a title to the land or any rightful legal or equitable claim against the state for it.

Appeal from Collin. Tried below before the Hon. W. H. Andrews.

The opinion states the facts.

*R. Maltbie* and *Jenkins & Goodner*, for appellants.

*Throckmorton, Brown & Bro.* and *J. R. Burns*, for appellees.

Walker, P. J.— This suit was instituted by S. C. McReynolds, the appellant, against the appellees, in form of an action of trespass to try title, on the 9th day of May, 1874, to recover six hundred and forty acres of land situated in Collin county and described by metes and bounds.

It was averred in substance in the petition that appellant's ancestors, J. M. McReynolds and his wife, Eliza A. McReynolds, as husband and wife, emigrated from the state of Arkansas to Texas in the year 1843, and settled the same year in Peters' colony on vacant land, which was the land in controversy, in the limits of what is now Collin county;

that they made improvements on the land required by law of colonists in order to entitle them to a certificate, and continued to reside on it until the spring of the year A. D. 1849, when they removed a short distance to the house of J. M. McReynolds' mother, but continued to exercise acts of ownership over the land until the death of Eliza A., in the fall of the same year, and that J. M. McReynolds from that time on continued to exercise acts of ownership over the land; that a certificate was issued to him, by authority of the state of Texas, for six hundred and forty acres of land, on the —— day of ——, A. D. 185–, on account of his immigration to and settlement in Peters' colony, as the head of a family, prior to the 1st day of July, A. D. 1848, and his residence therein the required time, and that he located the certificate for six hundred and forty acres of land upon the identical land settled upon by himself and Eliza A.; that a patent to the land was issued to him by the state of Texas on the —— day of ——, A. D. 1854, five-twelfths of which appellant claimed as heir of his mother, Eliza A., as heir of his deceased sister, Cornelia, and as assignee of Fanny M. Farris and her husband, J. L. Farris.

James M. McReynolds (joined by his second wife), plaintiff's said father, conveyed one-half of the land to Reese P. Murray on the 15th of September, 1854, and they conveyed the other half of said tract of land to S. Bowlby on the 4th day of February, 1857. The defendants claim through these two conveyances, either directly, or derivatively through said James M. McReynolds, who conveyed as aforesaid by deeds of warranty. The defenses set up by the defendants were that:

1st. The land sued for was never the community property of J. M. McReynolds and the mother of the appellant.

2d. If it was ever the community property of J. M. and Eliza McReynolds, that S. C. McReynolds and his sister, Mrs. Farris, received from the estate of J. M. McReynolds other property in lieu of their interest in it.

3d. That appellees hold under a warranty deed from J. M. McReynolds; and as his heirs, S. C. McReynolds and

Mrs. Farris have received property to an amount greater than the value of the property claimed by them in this suit.

4th. That the plaintiff is barred by limitation.

5th. That the matters have been adjudicated in another suit between the parties.

It was agreed at the trial that James M. McReynolds and Eliza McReynolds were married in 1842; that S. C. McReynolds, Fanny M. Farris and Cornelia M. McReynolds were the only children of that marriage; that Eliza McReynolds died in the year 1849, leaving said children her only heirs at law. That Cornelia died 17th February, 1853, leaving her father, J. M. McReynolds, and S. C. McReynolds and Fanny McReynolds, brother and sister of the whole blood, and George D. McReynolds, brother of the half blood, her only heirs at law.

That James M. and Eliza McReynolds, as husband and wife, emigrated to Peters' colony as colonists and settled upon the land in controversy in October, 1843, and continued to reside upon the same until February, 1849, having made the improvements required by the colony contract, when they removed to the residence of Mary Standifer in McKinney, but still holding and claiming said land, when said Eliza died in April, 1849.

Also, that the certificate afterwards obtained by James M. McReynolds was applied to the said section of land, and that the patent issued in his name, dated 11th day of May, 1854.

It was further agreed that the land in controversy was an even section, being section 22. Also, that at the sale to Reese P. Murray there were no improvements upon the portion conveyed to them. That Mary Ann Carr was the surviving wife of said Murray; that he died leaving no children; that his said widow afterwards married R. B. Carr; that she died on 31st December, 1873, leaving defendant R. B. Carr, her surviving husband, and Lee and Lou Carr, her only children and heirs at law. That the defendants and R. P. Murray went into possession of said land immediately after making said purchases, and have continued in possession to the institution of this suit. That R. P. Murray and

S. Bowlby each paid the purchase money to J. M. McReynolds, and that defendants and R. P. Murray have paid all taxes assessed against the land since their purchase.

That plaintiff, S. C. McReynolds, was born on the 7th of May, 1848, and Fanny M. McReynolds (Mrs. Farris) was born on the 10th of November, 1843; that she intermarried with —— Looney in the year 1864, was divorced from him in 1865, and married J. L. Farris on the 1st of October, 1866.

The cause was submitted to a jury; there was much testimony adduced in addition to the facts agreed to, bearing mainly upon the second, third and fifth grounds of defense, which have been heretofore specified.

Several bills of exceptions were taken by the plaintiff to the rulings of the court on questions of evidence which arose during a protracted trial, and also a bill of exceptions, which excepted to the entire charge of the court as given, except certain instructions which he had asked and were given; it also excepted to the refusal of the court to give one of the instructions which plaintiff asked to be given, and which the court declined to give. The instruction asked for by plaintiff and given embraces about one page of the transcript, to which, of course, no exception is taken; the remainder of the charge given, and excepted to, constitutes the bulk of the judge's charge, which embraces elaborate and detailed instructions on every branch of the case, and is quite lengthy. The giving of these charges asked by defendants, and refusal to give that one asked by plaintiff and refused, is assigned as error. Counter instructions were not asked by the plaintiff, nor grounds of exceptions specified in the bill of exceptions or assignment of errors, pointing out defects or errors in the charge.

Verdict and judgment for the defendants; motion for a new trial filed by the plaintiff, which was overruled, and he appealed to the supreme court.

The assignment of errors presents fully, for revision, the ruling of the court which overruled the plaintiff's exceptions to the amended answer of the defendants. setting up the aforesaid defenses; and it presents points made on excep-

tions to rulings on questions of evidence, that the court erred in giving the charges and refusing to give the charge before referred to, and in refusing to grant a new trial; also that the verdict was against the law and the evidence.

In respect to the errors complained of in the charge of the court we do not deem it necessary to consider them for the want of a proper assignment. "Where the assignment of errors indicates no particular charge or ruling of the court upon instructions which is complained of, but refers in general terms to 'the several charges refused,' and 'each several charge and instruction given,' and, on reference to them, they are found to be numerous (as they are in this case), the court will not deem it necessary to revise them, unless the right and justice of the case may demand it." Fisk v. Wilson, 15 Tex., 430. "The assignment should specify the particular charge objected to." 18 Tex., 658; 28 Tex., 105; and id., 134.

There was manifest error in that part of the charge of the court, on the subject of the equitable defense that the plaintiff and Mrs. Farris had received from their father's estate an amount of property equal in value to their interest in the land sued for, in requiring the plaintiff to establish those facts by evidence to the satisfaction of the jury, and failing so to do, instructing the jury to find for the defendants. "In a suit for land by the heirs of a deceased wife against vendees of the husband, subsequent to the wife's death, the heirship being established, and that the land was community property at the death of the parent, the children of the deceased are entitled to recover, unless some equitable defense be made." Johnson v. Harrison, 48 Tex., 258; limiting the case of Burleson v. Burleson, 28 Tex., 418. The burden rests upon the vendees of the husband and father to prove facts which authorize a sale, and if the case made be such that the heirs of the mother are entitled, *prima facie*, to recover, and the vendees would avoid such *prima facie* case by showing satisfaction out of the estate of the father, the proof of such affirmative fact devolves upon the party alleging its existence. The reverse of this proposition, so

far as the burden of proof is concerned, was, in effect, given in charge to the jury; but it does not appear that any injustice in this case could have resulted to the appellant from the transposition made by the court, as the evidence showed in what consisted the community property of the first marital partnership, and also the partition which was made of the property belonging to the second, after the father's death.

Hence, under the evidence before the jury, it is not apparent that the charge which was given influenced the jury to the injury of the appellant.

We do not deem it necessary, in order to arrive at a correct result in this case, to consider any other than the first proposition of the defendants, viz., that the land sued for was never the community property of J. M. McReynolds and the mother of the plaintiff.

The facts upon which the solution of the question depend are not contested, but are admitted by the parties; they have already been stated. Questions have arisen under our system of marital rights, from time to time, in our history, involving inquiries as to the community rights of a wife dying before the completion of the title, under various laws under which the government granted lands to the heads of families. Under the land policy of the government, from its inception as a republic, and under the colonization law of 1823 (Yates v. Houston, 3 Tex., 433), community rights of husband and wife have been recognized, and inducements offered to husband and wife jointly to emigrate and settle upon public lands, by granting to them, as their joint property, large estates in land. The death of the one or the other before the completion of the title by a grant or patent from the government has often presented questions as to when and under what circumstances the community right of the deceased matrimonial partner would attach, and when it would not have attached. A review of the cases shows that the courts have determined them under their varying aspects, and under different classes of grants to land, upon broad and comprehensive principles, under which, it has

been held, that if they both had become equitably entitled to the grant by virtue of their compliance with the conditions upon which land was promised to them by the government, the death of one of the objects of the bounty would not extinguish nor affect the right of the heirs of the deceased; that the title when acquired afterwards by the survivor would be held in trust for the heirs of the deceased husband or wife, as the case might be. "The grants of land made to married men (colonists) under the colonization law of 1823 are community property, and as such subject to division between the surviving and the heirs of the deceased partner of the marriage." Yates v. Houston, 3 Tex., 433. It was remarked in that case by Chief Justice Hemphill: "The fact that the grant was made to the head of the family is an immaterial circumstance, provided it was founded on considerations which impress upon it the character of a purchase, or of property acquired by onerous title.

"The headright grants, under the state colonization laws, in which some consideration was paid for the land itself, were made to the heads of families. And if, by law, lands were expressly directed to be sold to families, to a greater or less amount, according to the merits and circumstances of the applicants, and the grant were made in the name of the heads of the families, it could not be contended that such lands were the separate property of the husband." The facts of that case showed a grant to the husband as the head of a family, who had, with his family, emigrated to Texas, and settled in Austin's colony as a colonist. The title was held to vest as community property in the husband and wife, and not in the husband merely. A conveyance made by the surviving wife, after the husband's death, of one-half interest in the land, was held valid against the claim of the husband's children and heirs by a former wife who was not a colonist.

It was decided in Wilkinson v. Wilkinson, 20 Tex., 237, that land acquired by the husband, the head of a family, under the act of January 4, 1839, formed a part of the community; it was there held that, where the husband had ob-

tained a conditional certificate, under the act of January 4, 1839, and had the land in controversy surveyed thereon during the life-time of the wife, and the latter lived three years after the issue of the conditional certificate, so that, before her death, the husband became entitled to the grant of the unconditional, it was held that the wife had acquired such an interest in the land as descended to her heirs, although the unconditional certificate and patent were not obtained until several years after the wife's death.

In that case, the court, in the opinion delivered by Chief Justice Hemphill, refer to the case of Yates *v.* Houston, 3 Tex., 433, and rest the construction placed upon the laws as applied to the community rights of the deceased spouse, upon their equal rights and equities to the bounty of the government, when they shall both have performed the conditions prescribed by the law; and in Wilkinson *v.* Wilkinson, in determining the question whether any such right had vested in the wife in the land, at the time of her death, as would descend to her heirs, the opinion makes a clear discrimination between cases where the wife had, on her part, complied with the terms of the law, and thereby became entitled equitably to the land, and cases where, by reason of death, or other cause, she had failed to thus comply, and thereby forfeited such equitable claim against the government.

It is said in the opinion referred to, "The conditional certificate was issued and surveyed in the life-time of the wife. She lived for three years after the issue of this certificate; and before her death, the husband was clearly entitled to the grant of the unconditional certificate. He had the control of the community; and her rights, and those of her heirs, cannot be affected by his laches in applying for the certificate. The case is clearly distinguishable from that of Webb *v.* Webb in 15 Texas. In that case nothing had been done, before the death of the wife, which would attach an equity in favor of the heirs of the wife upon the grant issued after her death to the husband. It was not

shown that any legal step had been taken before her death to secure the land or a title."

The case of Webb v. Webb was decided upon these facts, viz.: The husband and wife emigrated to Texas in January, 1833, and the wife died in July, 1834, leaving two children by her husband, and title was extended to the husband for a league of land as the head of a family in 1835, and it further appeared that the husband had selected the land before the wife's death, but that the extension of the title was delayed by the refusal of the empresario to assent to it, he claiming the land as premium land. The court held that the land was not community property, and that the heirs of the wife were not therefore entitled. In disposing of the question, Justice Lipscomb says: "The statement of facts shows conclusively that the title to the land was not obtained until after the dissolution of the matrimonial relations by the death of the wife. Does it show that anything had been done before the dissolution giving a right, in law, to demand the title that subsequently issued to the husband, on which an equity could be raised in favor of the heirs of the wife, and attach to the land. . . . Had the children died before the date of the title, or adjudication of his qualification by the commissioner, he would not have been entitled to more than the portion of a single man. The children in this case were necessary to constitute the family, but they did not constitute the community." Webb v. Webb, 15 Tex., 276. Thus is sufficiently presented the distinguishing principle which separates two classes of cases; in the one, where the wife, as in Webb v. Webb, or the husband, as in Edwards v. Beavers, 19 Tex., 506, died, without at the time of the death being entitled to demand the title from the government, and without possessing the equitable interest derived from a performance of such conditions prescribed by the law, as would have entitled him or her, as the case might be, to a right in law to demand the title that subsequently issued to the survivor as the head of a family, there would exist no community rights in the land, and the

heirs of the deceased parent would inherit no interest in right thereof. In the other class, as illustrated in Yates *v.* Houston, 3 Tex., and Wilkinson *v.* Wilkinson, 20 Tex., where the deceased matrimonial partner had become entitled to demand, before her or his death, a title to the land, an equity would be raised in favor of the heirs of such deceased person, and would attach to the land; the survivor who afterwards acquired the title from the government would hold the same in trust for the heirs. Edwards *v.* Beavers, 19 Tex., 507; Fishback *v.* Young, 19 Tex., 515.

It appears from the statement of facts that the colony contract between Peters and the republic of Texas contained a reservation to the said republic of every alternate section of six hundred and forty acres, which should not be subject to settlement by the contractors, nor to selection by them as premium lands, under the provisions of the said contract. It is admitted that the settlement which McReynolds and his wife made was upon one of those reserved sections. The settlement thus made was in direct derogation of the law under which their settlement was made, and as colonists they could acquire no title to the land; none could be conferred by the colony contractor; none could be claimed in law or equity from the republic. At the time of the death of Mrs. McReynolds she had done nothing " which gave her a right in law to demand the title that subsequently issued to her husband, on which an equity could be raised in favor of her heirs, and attach to the land." There was not existing in the husband and wife, or either of them, any right to the land to form the subject of community property. The contract with Peters expired by its own limitation on the 1st day of July, 1848. The contractors had acquired no title to the land, and there was no law by which the colonists, as such, under them, could acquire it. Such seems to be the fair conclusion, even if the settlement had been made on a section which was not reserved to the republic from settlement; but surely no pretense of equitable or legal claim can be set up in favor of a settlement made as a colonist on lands which the law (colonial contract made under,

and therefore a part of the law) expressly prohibited being settled on. Mrs. McReynolds died, therefore, without possessing either a title to the land, or any rightful legal or equitable claim against the government for such.

The act of January 21, 1850, " to secure to all actual settlers within the limits of the colony granted to Peters and others, commonly known as Peters' colony, the land to which they are entitled as colonists," provided that " all actual settlers who have emigrated to this state as colonists, and settled within the limits of the colony granted to Peters and others, commonly known as Peters' colony, prior to the 1st day of July, A. D. 1848, shall be entitled to the quantity of land hereinafter stated, to wit: Each head of a family shall be entitled to six hundred and forty acres of land, including his or her improvements; and each single man . . . shall be entitled to three hundred and twenty acres of land, including his improvements."

There being no right to the land previous to this date in McReynolds and his wife, the above provision must be regarded as a legislative grant, and one, too, which was not made in discharge of an obligation of the government, but an act of sovereign grace and bounty on the part of the political authority. Causici v. La Coste, 20 Tex., 269. Mrs. Eliza McReynolds having died before the enactment of the law, her rights, or rather the rights of her heirs, cannot be made to depend on what privileges and benefits might have been acquired by her had she survived to reap the advantages of the legislation in question, but must depend upon what rights to the land existed at her death, and what were given by the act, and to whom were they given.

The legislative grant was made to the head of the family; J. M. McReynolds fully met this description; he was then the head of a family, he having then living three children, " who constituted," as was said in Webb v. Webb, " the family, but they did not constitute the community." The land granted under the act referred to was a donation by the government to a very meritorious class of persons; the traditional policy of the government from its foundation has

been to encourage them in accepting the bounty offered to them, and to protect and maintain them in acquiring and holding the benefits promised.

The construction which we have given to the act of 1850, and the conclusion we have deduced as to the rights of the heirs of Mrs. Eliza McReynolds to the.land, harmonize with the views which have been taken by our supreme court in regard to the community interests of the husband and wife under other laws similar in character to the act of 1850, and the laws and contracts made by the republic of Texas relating to Peters' colony grants. A construction which would deprive the husband and head of the family of an equal one-half portion of the land granted to him as the head of a family would be inconsistent with the general theory and practice in regard to community rights. And yet, if it be a correct proposition that the community rights of Mrs. Eliza McReynolds have survived the dissolution of the marital relation and attach to rights granted to J. M. McReynolds afterwards as the head of a family, by virtue of the equitable and meritorious considerations arising from her sharing with him the toils and privations of a colonist from 1842 until her death, it would follow that if during the period intervening between the date of the law of 1841, granting lands to emigrants in Peters' colony, and the passage of the law of 21st January, 1850, which granted six hundred and forty acres of land to heads of families, such colonist had had the misfortune to lose by death a first, second, third, or, as it might be, even a fourth wife, it would result that the heirs of the first wife would acquire one-half of the land granted, whilst the remaining half would be subject to be subdivided between the heirs of the succeeding wives, and but a fractional moiety would remain for the head of the family, or else the rights would have to be ascertained upon such equitable principles of apportionment of the respective interests of the several families as the courts might be able to establish as a proper rule of right.

Such an incongruous result militates against the more simple policy of the land laws, to grant lands to the head

of a family, who represents, under that description, either a certain specific matrimonial union, or else, if that has been dissolved by death, representing his deceased partner, if she was in fact entitled, or, if not entitled, representing the family which actually existed at the time of the grant.

The question which is involved in this case has been variously decided in the cases of Murphy v. Cannon, 31 Tex., 405; Caudle v. Weldon, 32 Tex., 357, and Carter v. Wise, 39 Tex., 273. The cases here cited in 31 Tex., and 39 Tex., held views adverse to those which we have expressed, whilst the case in 32 Tex. coincides with our conclusions, and upon much the same reasoning. We cannot regard the adjudications thus made as settling the law on the subject, especially in view of the principles and rules laid down in all the antecedent cases to which we have referred, and therefore we think it proper to follow and adopt that conclusion which appears to us to be best supported by the weight of authority, the analogies to be drawn from all the adjudications made by our supreme court, and the best reasons applicable to the subject.

The view which we take of the merits of the plaintiff's cause of action necessarily disposes of the case, without the necessity of considering any collateral or incidental question involved in the assignment of errors. Where a ruling cannot affect the result of a case it cannot be revised. Woods v. Durrett, 28 Tex., 431.

The briefs and arguments of the counsel on both sides are quite exhaustive and interesting; the discussion of the legal questions which are presented under the defense of *res adjudicata*, made by one of the able counsel of the appellees, deserves commendation for its research and clearness. We do not find it necessary, however, to determine the event of this appeal upon other grounds than that on which we have based our conclusions.

We are of opinion, therefore, that the judgment ought to be affirmed, and shall award accordingly.

                                        AFFIRMED.