LOUISA J. HODGE ET AL. V. M. B. DONALD.

(Case No. 2557.)

1. COLONIAL GRANT — COMMUNITY PROPERTY. — The rule deducible from former decisions by which it is determined whether a grant of land issued to a colonist was separate or community property, is as follows:

(1) If the surviving husband received the grant by reason of such emigration, settlement and residence on his own part as would under the law entitle him to it independent of his *status* as a married man at the date of his wife's death, it was his separate property.

(2) If the increased quantity of land over that to which a single man not the head of a family was entitled, was given to the surviving husband by reason of the fact that at the date of the death of the wife he was then a married man, then it was community property, and the half interest of the wife subject to the debts of the community would descend to her children.

2. PETERS' COLONY — STATUTES CONSTRUED. — As between the government and the colonial settlers in Peters' colony, who, having emigrated and settled with their wives as colonists, and who at the passage of the act of January 21, 1850, survived them, that act cannot be regarded as an act of sovereign grace and bounty to the husband without regard to pre-existing obligations on the part of the government. That act was not intended to *give* land to which they had no claim, but to *secure* them in that to which as colonists they were entitled.

3. CASES DISTINGUISHED. — This case distinguished from Causici *v.* La Coste, 20 Tex., 269.

Statement of the case.

4. PETERS' COLONY CERTIFICATE.— MARITAL RIGHTS.— See statement
   of case and opinion for facts under which it was held that title to
   six hundred 'and forty acres of land in Peters' colony, secured to a
   colonist (who, with his wife, had settled therein), by the act of
   January 21, 1850 (Pasch. Dig., art. 828), the wife having died prior
   to the passage of said act, and the certificate on which the title was
   based issuing after the passage of the act, was community, and
   not separate property.

APPEAL from Denton. Tried below before the Hon.
J. M. Lindsay.

Suit by Louisa P. Hodges and others, as the heirs of
Wm. B. Haws and his wife, Catharine Haws, brought
in May, 1871, to recover their mother's community in-
terest in land. The petition alleged that W. B. Haws
and his wife Catharine emigrated in 1845 to the state
of Texas and settled within the limits of the colony
granted by the republic to W. S. Peters and others; that
they brought into the colony four children, who are
plaintiffs, and who settled and remained in the colony
upon a tract of land described, containing one hundred
and forty acres, on which they erected a dwelling house
and other improvements; that they continued on that tract
until the summer of 1849, when Catharine, the wife, died,
leaving no will; that there was no administration and no
debts of the community; that after her death Wm. B.
Haws, the father, by virtue of his and his wife's emigra-
tion and settlement prior to July 1, 1848, obtained from
the commissioner of the general land office a certificate
for six hundred and forty acres of land, which was made
an exhibit; that he located a portion of that certificate on
the land, one hundred and forty acres, occupied by him,
and the remaining five hundred acres of land patented to
John Maloney and his assignee, on the 5th of July, 1856;
that W. B. Haws, the father, died January 1, 1858; that
at the death of said Catharine, the mother, she and her
husband claimed in common the said claim for six hun-
dred and forty acres and other property; that the plaint-

iffs had received from their father's estate nothing in lieu of their mother's interest in the community, and had no advancements; that they are the legal and equitable owners of the five hundred acre tract occupied, claimed and possessed by the defendant.

The petition concludes with the usual averments in trespass to try title.

A demurrer was sustained to the petition, and, the plaintiffs declining to amend, a judgment final was rendered against them.

*John P. Lovejoy* and *John N. Dickson*, for appellants.

*J. A. Carroll*, for appellee.

I. The land was never conveyed to Haws and wife by the colony company, nor is it shown that said contractors ever were in a condition to demand title from the government; in fact, the history of the legislation upon that subject shows the fact to be that the time expired without said contract ever having been complied with. Their rights were forfeited, and with them fell the rights of the colonists, for the one was dependent upon the other, and such was the legal *status* of the settlers in Peters' colony on the 1st day of July, 1848. The state was under no legal obligation to convey them any land; they had not emigrated to the state relying upon the promises of the state of Texas, but upon the faith of promises made to them by Peters and his associates that they would secure the title from the state and convey to them a portion of it; but Peters & Co. failed, and the colonists were left without any legal remedy. If the colony contractors obtained a title, then the colonists were entitled to a title; but the time for compliance having expired, and the contractors having failed, the fee to the land in controversy still in the state, not even claimed by Haws and wife, never had been. Can we say that this tract of land constituted a

part of the community estate of Haws and wife? Had they an equitable right to the land in controversy capable of being perfected into a legal estate on the 1st day of July, 1848? I think it clear that they had not. Edwards *v.* Beavers, 19 Tex., 506; Webb *v.* Webb, 15 Tex., 274; Fishback *v.* Young, 19 Tex., 475.

The agreement under which Haws and wife emigrated was with the colony contractors, and not with the state. They had full notice from the state by its public legislative acts, of the terms and conditions of the contract made by the republic with the colony contractors, and were charged with notice that their right was dependent upon whatever right might be acquired by the contractors. Caudle *v.* Welden, 32 Tex., 357.

If Haws and wife acquired no right prior to July, 1848, then they had no greater right at the death of Mrs. Haws in 1849.

II. We are forced, then, to inquire what remedy had the settlers in Peters' colony after the 1st of July, 1848? We have seen that they had no legal right that will not be contended for, and they had no equitable right capable of being perfected into a legal right. We must conclude that, in the language of Chief Justice Wheeler in Causici *v.* La Coste, 20 Tex., 269, "The right to petition the legal authorities for relief," and they did that, and the act of January 21, 1850, was the result. The state in her wisdom and policy granted the relief, but it was nevertheless an act of *sovereign grace* and *bounty*, the free gift of a generous hand, and not in discharge of any legal or equitable right whatever. Causici *v.* La Coste, 20 Tex., 269; Caudle *v.* Welden, 32 Tex., 357.

To show the applicability of the case of Causici *v.* La Coste to this case, I respectfully refer the court to the provisions of the act in reference to Peters' colony, approved January 21, 1850. Hart. Dig., p. 682, and the act in reference to Castro's colony, approved January 22,

1850; Hart. Dig., p. 699. The two acts had the same object in view, and the same proof was required from the colonists. Hart. Dig., arts. 2235, 2300. I again call the attention of the court to art. 2235 of Hartley's Digest. There it will be seen that the colonist was required to prove that they were settlers in the colony at the date of their application to the court for a certificate. No right, then, could have acquired under this act to Mrs. Haws, who had been dead several years at the passage of that act. Caudle v. Welden, 32 Tex., 358.

III. It will be observed that the land in controversy was not the land upon which Haws and wife lived at the time of Mrs. Haws' death, but was disconnected, had not been occupied by them, was not claimed by them, and I respectfully ask, when did this land become a part of their community estate? In the case of Webb v. Webb, 15 Tex., 274, this court held that land which had not been titled prior to the death of the wife constituted no part of the community; and in Stover v. Garvin, 22 Tex., 9, the court held that the land must have been settled and improved, and in the *use* of the husband *at the date* of the act of January 21, 1850, to entitle him to claim any specific portion of land. Then can it be said that any right had accrued to Mrs. Haws when she had been dead one year before the passage of that act, and two years before W. B. Haws acquired any claim to the land.

BONNER, ASSOCIATE JUSTICE.— The only point presented for our decision in this case is this: Did the court below err in sustaining the demurrer of defendant M. B. Donald to the petition of plaintiffs Louisa J. Hodges *et al.*, and in dismissing the same?

This depends upon the question whether the land in controversy was the separate property of the surviving husband, William B. Haws, or the community property of himself and his deceased wife, Catharine Haws.

The policy of Texas has ever been to induce by grants of land, both married and single men to immigrate and become citizens.   In consonance with the objects sought, greater inducements have been held out to the former class, as shown by the increased amount of land given. Although the certificate or title, under the law, issued to the husband as the head of the family, yet in considera- tion of the joint toils, privations and dangers undergone by the wife also, it has been repeatedly decided by this court that under our system it would constitute commu- nity property of the husband and wife, one-half of which, charged with the debts of the community, would, on the death of the wife, descend to her children.   Yates v. Houston, 3 Tex., 433; Wilkinson v. Wilkinson, 20 Tex., 237.    This accords with the general policy of our law upon the subject of marital rights, and an exception to it should not be allowed unless the facts of the particu- lar case clearly demand it.   In some cases where the wife died soon after her arrival into Texas, the subse- quent grant to the husband has been held to be his sepa- rate property, and not community, as in Webb v. Webb, 15 Tex., 274.

These cases will be found to be those in which the death of the wife occurred before there had been a sufficient compliance with the conditions upon which the land was offered, to have then entitled either the husband or the wife to demand it, upon equitable principles or under the terms of the law; and the subsequent grant to the husband was held to be his separate property, upon the ground that the consideration passed from him alone, and not from both him and the deceased wife.   In other cases, in which the death of the wife occurred subse- quently to a substantial compliance with the conditions upon which the grant was offered, it has been decided that it was community property.   Yates v. Houston, 3 Tex., 433; Wilkinson v. Wilkinson, 20 Tex., 237.

The true test, as we deduce from the authorities, is this:

*First.* Did the surviving husband receive the grant by reason of such immigration, settlement, residence, etc., on his own part, as would, under the law, entitle him to it, independently of the right based upon his *status* as a married man at the date of the death of the wife? If so, it was his separate property.

*Second.* Was the increased quantity over that to which a single man not the head of a family was entitled, given to the surviving husband by reason of the fact that, at the date of the death of the wife, he was then a married man? If so, it was community property of the husband and the deceased wife, her half interest in which, subject to the debts of the community, would descend to her children.

We do not think, as between the government of Texas and those colonists of Peters' colony who occupied the position of William B. and Catharine Haws, that the act of January 21, 1850 (Pasch. Dig., art. 828), was purely an act of sovereign grace and bounty, without regard to any pre-existing obligation on the part of the government to them, as applied in the case of Causici *v.* La Coste, 20 Tex., 269. That was a suit brought by the plaintiff as assignee of the contractor, Castro, who had forfeited his contract by non-compliance, against certain parties as assignees of his colonists, who claimed title, not by virtue of their original contract with Castro and under that contract, by which Castro was entitled to part of the land, but by virtue of a subsequent legislative act to protect their titles which had failed under the Castro forfeited contract. There was no question in that case as to community rights in the title as given by the legislative grant: in fact, the attitude and claims of the parties were entirely different from that presented in the present suit.

Passing by the question whether the contract of Peters and others with the government had been forfeited,

though from the subsequent act of the legislature of February 10, 1852 (Pasch. Dig., art. 848), granting them seventeen hundred sections of land on account of it, we are warranted in at least saying that it had not been entirely forfeited, it will be seen, from an inspection of the Peters' colony acts, that the government offered great inducements to those persons who, upon the faith of these acts, should come into Texas and settle within the limits assigned to those contractors.

By section 7 of the original act (Pasch. Dig., art. 813), it is contemplated that as much as six hundred and forty acres of land might be located for any family comprehended in the contract, and three hundred and twenty acres to a single man.

By sections 8 and 9 (Pasch. Dig., arts. 814–15), it is provided that not more than one-half the land should be subject to sale for the expense incurred by the contractor for passage, transportation or removal to Texas, or for the selection, surveying, title or other fees, in regard to the land.

By section 12 (Pasch. Dig., art. 818), it is provided that "a failure on the part of the contractors, and a forfeiture of their contract, shall not be prejudicial to the rights of such families and single persons as they may introduce, who shall be entitled to their respective quotas of land agreeable to the provisions of this law." This guaranty was further made in the ordinance to the constitution of 1845. Pasch. Dig., p. 76.

In pursuance of these promises, made by solemn legislative enactment, the statute of January 21, 1850, was passed, entitled "An act to secure to all actual settlers within the limits of the colony granted to Peters and others, commonly known as Peters' colony, the land to which they are entitled as colonists." Pasch. Dig., p. 236.

It will be seen from the caption that the act was not intended to *give* them lands to which they had no claim otherwise, but simply to *secure* them in that to which they were already entitled as colonists, their title to which had become involved in the confusion growing out of the settlement with the contractors, Peters and others.

Section first of the act is as follows:

"All actual settlers who have emigrated to this state as colonists, and settled within the limits of the colony granted to Peters and others, commonly known as Peters' colony, prior to the 1st day of July in the year 1848, shall be entitled to the quantity of land hereinafter stated, to wit: each head of a family shall be entitled to six hundred and forty acres of land, including his or her improvements; and each single man who was, at the time of his immigration to and settlement in said colony, over the age of seventeen years, shall be entitled to three hundred and twenty acres of land, including his improvements." Pasch. Dig., art. 828.

The two essential requisites of the act to entitle the party to the benefit of its provisions were, immigration into Texas as a colonist, and settlement within the limits of the colony of Peters and others, prior to July 1, 1848. There was no other limitation upon the right, and no subsequent act or duty required, except that which evidently applied to those only who should be living at the time they claimed the benefit of the statute, contained in section 7 of the act. This section is as follows:

"To entitle settlers to the benefits of this act, they shall each be required to prove by his or her own oath, supported by the oath of two or more witnesses, that such settler emigrated to Texas and settled within the limits of said colony, granted to Peters and others, as a colonist, prior to the 1st day of July, 1848, and that they have since continued and still remain settlers of said colony,

and have performed all of the duties required of them as good citizens." . . . Pasch. Dig., art. 834.

That this section was not intended.to affect the interest of those who otherwise came within the requisites of section 1, but who, by reason of death, could not take the oath, etc., prescribed by section 7, is placed beyond all doubt by section 2 of the act, which is as follows:

"The heirs or legal representatives of such as have died subsequently to their settlement within said colony limits shall be entitled to the same quantity of land to which the persons whom they represent would have been entitled." Pasch. Dig., art. 829.

By the original Peters' colony act there was no condition subsequent of continued residence required. By the subsequent joint resolution of January 16, 1843 (Pasch. Dig., art. 822), modifying the original act, a condition subsequent of three years' residence, improvement and cultivation was imposed.

It would seem from the allegation in the petition, that Mrs. Catharine Haws had, previously to her death in 1849, which occurred but a short time before the passage of the act of January 21, 1850, complied substantially with these conditions. She evidently came within the designation of such person as, under section 1, act January 21, 1850, was entitled to relief, she having immigrated to Texas as a colonist, and having settled as such within the limits of the colony granted to Peters and others prior to July 1, 1848; and having lived upon part of the land secured by the act of January 21, 1850, from the year 1845 until her death thereon in 1849. The *status* of the husband, William B. Haws, on July 1, 1848 — the date when the contract with Peters and others expired by limitation, and the date fixed by the act as the test of the right to demand the benefit of the statute — was that of a married man; Catharine Haws, the mother of the

plaintiffs, being then his living wife, and as much entitled as he was to the land, which was secured by virtue of their prior immigration and their then settlement and residence in Peters' colony. It may be added in this connection, that the petition to which the demurrer was sustained, and the land certificate made a part of it, which was issued under the act in question, show upon their face that the grant of six hundred and forty acres of land was made to William B. Haws by virtue of his immigration to Texas and entry into the colony as a colonist prior to July, 1848, with his *wife* and children.

Had the husband also died subsequent to July 1, 1848, and prior to the passage of the act of January 21, 1850, evidently under section 2 of the act the heirs and legal representatives of the deceased parties could have obtained the certificate, and then it would have been community property. Edwards *v.* Beavers, 19 Tex., 506; Marks *v.* Hill, 46 Tex., 345.

We are of opinion that the six hundred and forty acres of land, the title to which was secured by the act of January 21, 1850, was the community property of William B. and Catharine Haws. What may be the ultimate right and equities arising outside of this question is not before us.

The view we here take of the law is supported by the earliest and latest case where this question has come before this court. Cannon *v.* Murphy, 31 Tex., 405; Carter *v.* Wise, 39 Tex., 273. It was held *contra* in Caudle *v.* Welden, 32 Tex., 355.

In the very elaborate opinion of Presiding Judge Walker, in the case of McReynolds *v.* Bowlly, submitted by consent to the commissioners of appeals and decided at the Austin term, 1880, in which the same result was reached as in the case of Caudle *v.* Welden, *supra*, much weight was given to the fact that the land settled upon

was a reserved section, not subject to location, and hence the settlement was void as being against law.

For the error of the court in sustaining the demurrer to the petition the judgment below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 24, 1881.]

Ch. J. MOORE did not sit in this case.