JOSEPH WEBB AND OTHERS v. EMILY A. WEBB, ADM'X.

Where the husband and wife emigrated to Texas in January, 1833, and the wife died in July, 1834, leaving two children by her said husband, and title was extended to the husband for a league of land as the head of a family in 1835, and it further appeared that the husband had selected the land before the wife's death, but that the extension of the title was delayed by the refusal of the Empresario to assent to it, he claiming the land as premium land, it was held that the land was not community property, and that the heirs of the wife were therefore not entitled.

Appeal from Robertson.

F. L. Barziza and A. M. Lewis, for appellants.

*T. Harrison*, for appellee. The following authorities are deemed conclusive to sustain the judgment of the Court below: (Holloman v. Peebles, 1 Tex. R. 690 ; 2 Id. 311; 5 Id. 258; 6 Id. 231 ; Yates v. Houston, 3 Id. 433 ; Houston v. Ijams, and authorities there cited,; Edwards v. James, 7 Id, 372 ; Teal v. Robinson, 9 Id. ; Creth v. Republic, 1 Id. 83 ; Kennedy's heirs v. State, 11 Id. 108.)

The record shows the emigration to Texas and settlement, as colonists in Robertson's Colony, before the death of the wife, on the league of land which was granted. All the cases on the subject show that the consideration was performed, and the right attached by the emigration and settlement as colonists. Observe also that they applied for the land in her lifetime. It was then refused because claimed by Robertson as premium lands ; thus recognizing them as colonists and their right to lands.

Lipscomb, J. The appellee brought suit against the appellants, to recover, as administratrix, the share of the land which her intestate claimed as one of the heirs of Jane Webb, deceased. The statement of facts, it is evident, is imperfect and carelessly drafted. It is as follows: The defendant, Joseph Webb, and his wife, Jane Webb, emigrated to Texas and settled as colonists in Robertson's Colony, in the month of January, 1833. Jane Webb died in the Colony and near the land in controversy, on the first day of July, 1834, leaving two children, a son and a daughter, by Joseph Webb. The son, Jesse, married the plaintiff in the month of ——, 1853, and died in the month of November, 1853, leaving one child which is an infant, and leaving the plaintiff his administratrix ; (this last is a mistake ; she was appointed by the Court administratrix;) and his estate in debt. The daughter married Gholson, her co-defendant. A league of land was granted to the defendant Joseph Webb as a colonist of Robertson's Colony by the Government. The title is dated 12 of January, 1835. This is the

same land described in the petition ; and 800 acres out of the lower half of it was sold in the lifetime of Jesse Webb, deceased, to Robert Calvert. The land was selected by the defendant Webb before the death of Jane Webb, but not surveyed or titled at that time, and was claimed by Robertson as premium land. Robertson refused to title the land before her death ; after the death of Jane Webb, consented that Joseph Webb might have the land.

The question presented by this statement of facts is, was the property now in controversy held by the husband and wife at the time of her death as community property? If it was, there is no question but that her heirs are entitled to the one half, after the payment of the community debts. The statement of facts shows conclusively, that the title to the land was not obtained until after the dissolution of the matrimonal relations by the death of the wife. Does it show that anything had been done before this dissolution, giving a right in law, to demand the title that subsequently issued to the husband, on which an equity could be raised in favor of the heirs of the wife, and attach to the land? The record of the statement of facts shows that the land had been selected before the death of the wife, but does not show in what way it had been selected, whether by application to the Commissioner or in any other way. It does not show that the requisite qualifications of the applicant had been decided upon by the Commissioner, or that anything had been done, that was essential to the validity of the grant, prior to the death of the wife. We have no evidence that the necessary qualification of the colonist had been adjudicated upon by the Commissioner, before the date of the title ; and at that time the husband was qualified as a head of a family to have received the same quantity of land, as his children were in the country with him. Had the children died before the date of the title, or adjudication of his qualification by the Commissioner, he would not have been entitled to more than the portion of a single man. The children, in this case, were neces-

Webb v. Webb.

sary to constitute the family, but they did not constitute a community. The statement of facts shows that "Robertson, who "was the Empresario, refused to title the land before her death; "after the death of Jane Webb, he consented that Joseph Webb "might have the land." The Empresario had no right to make title ; that appertained altogether to the Commissioner, and it was not necessary that his consent should be obtained, or that he should be consulted by the Commissioner, only in one case. In Bissell v. Haynes we say, "the Commissioner, under a colo-"nization contract, holds his office independent of the Empres-"ario, directly from the Government;" and again, "with one "solitary exception, he judged for himself of the sufficiency "of the qualifications of a colonist to receive title to the land "petitioned for ;" and we say that exception is in the case of a foreigner petitioning for land. Such foreigners are required to produce certificates from the authorities of the country from which they came, thereby proving themselves to be of the Christian religion, and of good moral character ; and by Article 2d of the Instructions issued to the Commissioners, it is directed that, in order to guard against false certificates, the Commissioner shall admit none until after the Empresario, to whom they shall previously be transmitted for the purpose, shall give information in writing relative to the legitimacy of the same. (9 Tex. R. 586, 587.) It is probable that it is to his withholding his favorable report on this subject, that the statement of facts refers, when it is stated that Robertson refused to title the land ; but it cannot be regarded as material. We believe the land was not acquired as community property, and the judgment is reversed.

Judgment reversed.