## HEZEKIAH WALTERS' HEIRS v. JOHN G. JEWETT'S HEIRS.

A husband and wife with their infant children emigrated to Texas in 1835, and thereby became entitled to their head-right league and labor of land, under the 10th general provision of the constitution of the republic. In January, 1837, before obtaining their certificate, the husband sold and made conveyance of one half of the head-right claim. In December, 1837, the wife died; and in February, 1838, the surviving husband sold the remaining half of the head-right claim to the same vendee, and executed to him a power of attorney, authorizing him to apply for, obtain, and locate the certificate for his own use and benefit, and transferring to him all right, title, and interest in the certificate and in the land to be located by it. The effect of this latter instrument was that of an absolute sale and conveyance by the maker of all the grantor's interest to the *quantum* of land to which he was entitled.

In March, 1838, the board of land commissioners for Red River county issued to the vendee, as assignee of the husband, (who, before the death of the wife, had conveyed one-half of their right against the government, and after her death all the residue of his right,) a certificate for the league and labor to which the latter was entitled as the head of the family, and subsequently the vendee located the certificate, and received a patent for the land located. The certificate thus became the property of the assignee.

In 1856, the children, of parents who had sold their head-right certificate before it issued, having attained their majority, brought suit against the patentee for one-half of the land, alleging that they were entitled thereto as the heirs of their mother, upon whose estate no administration had ever been had: *Held,* that the facts do not invest the plaintiffs with a valid legal title to any portion of the land, and consequently their suit, being based upon the assumption of such a title, is not maintainable. (See the opinion for distinctions taken between this case and that of Webb v. Webb, 15 Tex., 274; and also between this case and Wilkinson v. Wilkinson, 20 Tex., 237.)

In the case of a right under the 10th general provision of the constitution of

the republic, there was nothing to descend to the plaintiffs from their mother, at the time of her death, but the bare inchoate right to obtain a certificate. The children can be said to have inherited from her nothing more than an equity, which, if the certificate had been issued to their father, would have entitled them to an interest in it. But the certificate having been issued, not to their father, but to the assignee in his own name and right, who received and located it for himself alone, and who at his own cost obtained the survey and patent for the land, the plaintiffs, to maintain any rights as against the patentee, must establish such facts as will authorize a court of competent jurisdiction to declare him a trustee for them to the extent of such interest as they may be equitably entitled to.

In a proceeding for the purpose of establishing an equitable trust, the plaintiffs would be required to disclose all the facts and circumstances connected with the case, making it manifest that the remedy they ask is indispensable to their relief; that they come into court with clean hands, and are prepared to do as well as to receive equity; and that it is inequitable for the defendant to withhold from them the relief they seek, for, if the equities are balanced, the legal title will not be disturbed.

The right to head-right certificates was fixed by the 10th general provision of the constitution of the republic of 1836, and that right rested upon the fact of residence in the country at the declaration of independence of that year. (Paschal's Dig., p. 37, sec. 10, Notes 145, 146.)

The primary object before the boards of land commissioners was not so much to ascertain the qualifications of parties at the date of their applications, (although conditions of this kind were superadded by the law,) as to determine to whom they were guarantied and secured by the constitution. (Paschal's Dig., Art. 4140, Note 953.)

This right was but an inchoate equitable right to obtain the certificate. No property was then *in esse* which could descend to the heirs, or of which an administrator could take an account.

It might, perhaps, be urged, with much propriety, that the judgment of the board of land commissioners, awarding the certificate to the assignee, could not be called in question collaterally, but only in a direct proceeding for that purpose. And undoubtedly, after the great lapse of time disclosed in this case, their judgment should not be questioned collaterally, except upon strong and satisfactory proof.

ERROR from Collin. The case was tried before Hon. NAT. M. BURFORD, one of the district judges.

The trial in the District Court was had at the spring term, 1859, and the plaintiffs sued out their writ of error in December of the same year.

Away back previous to 1835, (it does not appear just

13—XXVIII

when,) Hezekiah Walters married Zeruiah, the name of whose father is not given, and, while Texas was yet part of a Mexican State, they emigrated to the country of colonial enterprises. The law which invited them promised to the family a league of land, and this grant, according to the laws governing marital rights, would have been community property. (Paschal's Dig., Art. 4642, Note 1049.) But all the colonization laws were repealed on the 26th March, 1834. (Paschal's Dig., Arts. 736, 737, Notes 385, 386.) And by a decree of 30th March, 1835, it was declared, that all persons or families now residing in Texas, and who shall have emigrated previous to the date of this law, for the purpose of settling in the country, and who have not received lands according to the colonization laws, are hereby declared to be entitled to the portions designated by the law of the 24th March, 1825. (Paschal's Dig., Art. 754.)

The revolutionary constitution of Texas annulled this mode of obtaining land. (Paschal's Dig., p. 27, Note 125.) But the constitution of the republic guarantied the fulfillment of the obligations of the previous government, by declaring, that "all citizens now living in Texas, who have not received their portion of land in like manner as colonists, shall be entitled to land in the following proportion and manner: "Every head of a family shall be entitled to one league and labor of land; and every single man, of the age of seventeen and upwards, shall be entitled to one-third part of one league of land." (Paschal's Dig., p. 37, sec. 10, Note 146.)

Hezekiah Walters came under the category of the head of a family. There was a provision in favor of alienation on the same page, which was construed to extend to this class of rights. Hezekiah Walters availed himself of this privilege, and on the 3d day of January, 1837, and during the lifetime of his wife, he sold one half of this claim upon the government to John G. Jewett; and, after the death of

his wife, on the 9th of February, 1838, Walters sold the other half to Jewett. That same year the board of land commissioners issued the certificate for the league and labor to Jewett, as assignee of Hezekiah Walters. Jewett located the land, had it surveyed, and returned the field-notes to the general land office; and the patent was issued to Jewett, as assignee of Walters, because the certificate had been issued to him. (Paschal's Dig., Arts. 4290 to 4294.)

The legal title to the land was thus in Jewett. But whether the children of Walters were reared or grew up does not appear. Certainly it is one of the cases which Chief Justice Hemphill reprehended, where children did not observe the commandment, "Honor thy father and thy mother." Twenty years after these sales by the father, the children sued their father and his vendee for one-half of the land. They denied the validity of the first sale, because the right was not a thing *in esse*, for if it were, then the father, as the head of the family, had the right to sell all or one-half, and therefore their claim would have been limited to a fourth, their mother's interest in the remaining half. And so, disregarding the first sale as a thing that could not be lost by purchase, they said that it was property which could pass by descent; and that no part having been lost by purchase, the one-half of the whole descended to the children of the community as heirs, and therefore the father's sale, a month after the death of the mother, could not affect their right as heirs. Jewett's heirs stood upon their legal title; the heirs of Mrs. Walters claimed that he held half of that legal title in trust for them.

The charge of the judge and the more particular facts are given in the opinion of the court.

*B. Warren Stone*, for appellants.—Although in the assignment of errors in this case appellants have made the points of error of the jury as to the law and evidence, (which we

think good,) yet the important question arises upon the charge of the court, the settlement of which will settle the issue upon which this case must be decided.

The wife was clearly entitled to her half interest in the land acquired by virtue of the settlement of Walters and herself in the republic, in 1835, and by virtue of the fact of their being in the country at the declaration of independence. The charge of the court is error, when it asserts that "If Walters with his wife and children emigrated to Texas prior to the declaration of independence, in 1835, and that the wife died prior to the issuance of the certificate to Walters' assignee, Jewett, then, in that event, Mrs. Walters, by virtue of her emigration to Texas, acquired no right to the land in controversy, or any other land that would descend to plaintiffs as heirs." If Mrs. Walters had not the legal title, she had the equitable title, for her being in the country at the declaration of independence gave her clearly the right. She had the right to demand the land. (Hart. Dig., sec. 10, general provisions of the constitution of the republic.) The case of Edwards v. Beavers, 19 Tex., 511, is especially referred to.

*I. A. & Geo. W. Paschal,* for appellees.—The legal proposition charged by the court is correct.

The constitution was only a guaranty to make good to heads of families, then resident, their claims upon the body politic.

The boards were not open to prove these claims until March, 1838. But before that time, the husband, as the head of the family, had sold the equitable right to a thing not then *in esse.* Even if this right were proved up after her death, (about which there is nothing clear,) still the title of the assignee would be good, because, according to the universal usage, the husband was the head of the family, with the right to sell the certificates, which never became property until they issued.

The appellant relied upon Wilkinson v. Wilkinson, 20 Tex., 242, as a conclusive authority. But in that case, the conditional certificate was issued on the 21st December, 1839, under the act of the 4th January of that year. The land was surveyed in 1841, and the wife died two years afterwards. Everything to perfect the right had been done in that case, and it was held to be distinguishable from the case of Webb v. Webb, 15 Tex., 274. In that case there certainly was a stronger equity in favor of the wife than in this, because there was proof that the land had been selected, but it turned upon the point, that nothing had been done during the lifetime of the wife towards obtaining the title.

That is certainly the case here. They had been entitled to the privileges of colonists, which right had been merged into a guaranty in the constitution. But nothing had been done or could have been done towards perfecting the title if she died in December, 1837; but if in 1838, then the sale preceded her death, so that in either case the heirs had no rights.

The plaintiff's counsel refers to Edwards v. Beavers, 19 Tex., 511. That authority is positively and conclusively upon our side. We ask an affirmance of the judgment.

MOORE, C. J.—This suit was brought by the plaintiffs in error, the children and heirs of Zeruiah Walters, against their father, Hezekiah Walters, and the heirs of John G. Jewett, deceased, to establish title and have partitioned to them one-half of a league and labor of land, patented in the year 1845 to said John G. Jewett, on a certificate issued to him on the 27th day of March, 1838, by the board of land commissioners of Red River county, as assignee of said Hezekiah Walters. The plaintiffs aver in their petition that their father and mother, Hezekiah and Zeruiah Walters, were married in the State of Illinois, and emi-

grated to Texas previous to the declaration of independence, and were residents thereof at that time.

By reason of their said emigration and settlement, the plaintiffs claim that their said parents were guarantied by the constitution of the republic of Texas a league and labor of land. They also allege that their mother died before the opening of the land office, and consequently before the certificate to which their parents were entitled could be procured, and no admististration was ever had at any time upon her estate; but after her death they say their father "made a pretended sale of said league and labor of land" to said John G. Jewett.

It appears from the evidence in the record, that Jewett, on the 3d day of January, 1837, during the life of Mrs. Walters, purchased of Walters one-half of his head-right claim, and a title for this half was then executed. Afterwards, on the 9th of February, 1838, subsequently to Mrs. Walters' death, he purchased the other half of it, and Walters then executed to him an instrument, which purports to be a power of attorney, authorizing him to apply for, obtain, and locate the entire certificate in his own name, for his own use and benefit, and transferring to him all right, title, and interest in the certificate and the land to be located by virtue of it. This instrument is acknowledged to be made in consideration of $2,085, paid by Jewett to Walters, and unquestionably its legal effect is that of an absolute sale and conveyance by the latter of all his right and interest in the *quantum* of land to which he was entitled.

The other facts are not materially dissimilar from the allegations of the petition.

This suit was commenced on the 21st of January, 1856. The plaintiffs, at the death of their mother, about the 1st of January, 1838, were of very tender years, the youngest of them not being more than a few weeks old; yet it is

a noticeable fact, that nothing is said as to the pecuniary
condition of Walters at the time of his wife's death, or as
to his means of supporting and caring for a family, or
whether the plaintiffs were nurtured and reared by him, or
had been cared for and protected during their infancy by
some one else. It may be also observed, although Walters
is made a defendant and is served with process, he fails to
answer, and no further notice is taken of him in the case.

Upon the trial, the court instructed the jury, that if they
were "satisfied from the evidence that Walters sold his
claim to land to Jewett, and that, under said sale, a certifi-
cate for a league and labor of land was issued to Jewett as
the assignee of Walters, then the land acquired by virtue
of such certificate would be the property of Jewett, and
the plaintiffs, as the heirs of Mrs. Walters, could have no
right, either legal or equitable, to any portion of the land
so acquired."

There were a verdict and judgment for the defendants, a
motion for a new trial, which was overruled by the court,
and writ of error by the plaintiffs.   The errors they assign
are in substance error in the charge of the court, and that
the verdict of the jury is contrary to the law and evidence.
Whether there is error of which the plaintiffs can complain
depends evidently upon their right, in the case presented
by the record, to a judgment for any part of the land de-
scribed in their petition.

The judge of the District Court, before whom the case
was tried, from his instructions to the jury, evidently
regarded it as strictly analogous to that of Webb v.
Webb, 15 Tex., 274, and the law, as settled in that case, to
be conclusively against the plaintiffs.  In the correctness
of this view of the case all of the court do not concur;
neither do we agree with the plaintiffs, that the question
for our consideration has been decided by the court in the
case of Wilkinson v. Wilkinson, 20 Tex., 242.   The ruling
in the first of these cases is placed, it seems to us, upon the

supposition, that the grantee had no certain or vested interest until his qualifications as a colonist had been passed upon and recognized by the commissioner. Although he may not have been entitled when he first made his selection, if he were entitled when his application was presented to the commissioner, the grant should issue. Therefore, we should see who composed his family at the date of the grant, instead of at the time of his emigration, to ascertain in right of whom he obtained it. In the present case, the right is fixed by the constitution on the fact of residence in the country at the declaration of independence.

The primary object of inquiry before the boards of land commissioners was not so much to ascertain the qualifications of parties at the date of their applications, although conditions of this kind were superadded by the law, as to determine to whom they were guarantied and secured by the constitution.

But if there be a distinction between this and the case of Webb v. Webb, there is a more palpable and manifest one between it and that of Wilkinson v. Wilkinson. In the latter case, the unconditional certificate issued and was located in the life of the wife. The land sued for was a part of the *corpus* of the community property at her death. The patent was issued to the surviving husband before the sale. The legal title was vested in the surviving husband as the representative of the estate before there was any effort to impair or defeat the rights of the heirs of the deceased wife by a sale of the property. In the case now before us, there was nothing to descend to the plaintiffs at the death of their mother but the bare inchoate right to a certificate. The county boards for issuing certificates had not even been then organized. No property was then *in esse* which could descend to the heirs, or of which an administrator could take an account. They can be said to have acquired through their mother nothing more than an equity, which would have drawn to them an interest in the

certificate when issued to their father, who stood as the representative, in this respect, of the community. But the certificate did not issue to their father. The title was vested by the granting power directly in Jewett. The certificate was issued to him in his own name and in his own right. It is true this was done because the tribunal intrusted with this duty had decided that he was entitled as assignee to the right conferred by the constitution upon Walters as head of a family to a certificate for a league and labor of land.

It might, perhaps, be urged, with much justness, that the tribunal which granted this certificate, being clothed with authority to determine in whose favor it should issue, the correctness of its judgment could not be questioned, except in a direct proceeding for that purpose. Undoubtedly it should not be done collaterally, and after the great length of time which has elapsed since this certificate was issued, except on strong and satisfactory proof.

The rights of the plaintiffs, in respect to the certificate granted to Jewett, are certainly very different from what they would have been if it had been granted to their father. If the latter had been the case, the title would have been in him, as the representative of the community. He would have been the mere medium for receiving it. The certificate would have immediately become a part of the community estate. It would have been simply held by the father for those entitled to this estate, whether himself and wife, or himself and her heirs. But when the certificate was issued to the assignee, this was altogether different. In such case, if the heirs of a deceased wife have an interest, it is an interest to, and not in, the certificate. The grantee in this case receives it for himself alone, and not as representing any right or interest of theirs. To reach the certificate in his hands, it is necessary for them to establish such facts as will authorize a court of competent jurisdiction to declare him a trustee

for them. More especially is this the case when the certificate, which was of comparatively little value when issued, has been located on valuable land, which was surveyed and patented solely at the cost of the assignee.

The rules regulating suits, in which the holder of a legal title is sought to be held a trustee for the owner of an equitable interest, are well settled and of familiar use. The plaintiff in such suits must disclose all the facts and circumstances connected with the business. He must make it manifest that the remedy he asks is indispensable to his relief, that he comes into court with clean hands, and has or is prepared to do equity himself. It must also appear that it is inequitable for the defendant to withhold from him the relief he seeks, for, if their equities are nearly balanced, the legal title will not be disturbed. The plaintiffs in this suit do not pretend to do anything of this sort; they attempt to do no more than assert what they conceived a valid legal title, which they claim is conclusively established by proof of the community interest of their mother at the date of the declaration of independence, her death, the subsequent sale by their father, the issuance of the certificate, and the patenting of the land. In this, as we have seen, they altogether mistook the law of the case. The judgment is

AFFIRMED.