### J. B. BISHOP V. W. B. AND J. R. LUSK.

#### No. 410.

1. **Community Property—Acquisition by Limitation.**—A husband and wife without paper title settled upon a tract of land, and after two years' adverse possession the wife died. The husband remained in possession until title was perfected under the statute of ten years' limitation. *Held:*

1. At the time of the death of the wife the occupants had no title or interest in the land which the law recognizes. Their holding being wrongful, they were trespassers.

2. The land was not "acquired" during coverture within the meaning of article 2852, Sayles' Civil Statutes, defining community property.

3. The wife at the time of her death had no interest in the land, legal or equitable, in contemplation of law, and none could be cast upon her heirs by descent.

2. **Rents—Pleadings and Judgment.**—Judgment for rents should not be for a greater amount per year than is claimed in the petition.

APPEAL from Henderson. Tried below before Hon. W. Q. REEVES.

*Bishop & Eustace,* for appellant.—The bare contingent possessory right held on the land in controversy by W. M. Sloan and his first wife at the time of her death was not title in esse nor in embryo, and any acquisition of right or title made by W. M. Sloan after his marriage to his second wife, whether by purchase from S. B. Lusk or by limitation, or by buying back in compromise the bare right to prescribe by and under the laws of limitation, and whether such right has yet ripened into title, the land was not then, is not now, nor ever can be, community property of W. M. Sloan and his first wife. Rev. Stats., arts. 2852, 3215; Grigsby v. Peak, 57 Texas, 147; Hickman v. Withers,

83 Texas, 578; Bledsoe v. Cains, 10 Texas, 455; Craig v. Cartwright, 65 Texas, 421.

No brief for appellees reached the Reporter.

FINLEY, ASSOCIATE JUSTICE.—This is a suit of trespass to try title to 320 acres of land, situated in Henderson County, and for recovery of rents, etc.

Appellant claims title under W. M. Sloan, through purchase at administrator's sale; while appellees claim as heirs of Mrs. W. M. Sloan, their grandmother.

The court below found that the land in controversy was the community property of W. M. Sloan and his first wife; that appellees are the grandchildren and heirs of this marriage, and as such, are entitled to the community interest of their grandmother. The question whether this was the community property of W. M. Sloan and his first wife is urged as the main point in the case in the brief and argument of appellant. Appellees present no brief.

The facts found by the court below, upon which is based the conclusion of law, that the property was the community property of W. M. Sloan and his first wife, are as follows: "I find that W. M. Sloan and his first wife settled on a 640 acres tract of land in January, 1859—one-half of which is the land in controversy—cultivating it and using it as their homestead. That it was continually so occupied by them until 1869, in August or September, when Mrs. Sloan died; and thereafter, until 1876, it was occupied without break in possession by W. M. Sloan, as his homestead, W. M. Sloan marrying his second wife in 1870." The court further finds, that said Sloan continued to occupy in person and by tenants to the time of his death, in 1887.

Appellant bought the title of W. M. Sloan under a regular administration sale. It will be seen that the title of W. M. Sloan was acquired under the statute of limitations of ten years. His adverse occupancy began in January, 1859, during the life-time of his first wife, and continued during her life, to August or September, 1869, when she died. The statute of limitation was suspended in Texas from January 28, 1861, to March 30, 1870. Limitation had run about two years when the wife died, and the bar of the statute was not complete until March, 1878, more than eight years after her death. The two years' occupancy during the life-time of the first wife, while the statute of limitation was in operation, is the only basis upon which the theory that the property is the community property of the husband and wife can be placed. Our statute fixing the property rights of husband and wife, is as follows: "Article 2852 (Sayles' Statutes). All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise, or descent, shall be deemed the community property of the husband and wife, and during the coverture may be disposed of by the husband only."

If this land was "acquired" during the coverture of W. M. Sloan and his first wife, then they owned it in common. Can it be said that the land was "acquired" during their coverture, within the meaning of the statute? Our statute of limitations gives any one having a right of action for the recovery of lands ten years in which to institute suit against an adverse holder, without paper title. Art. 3194, Rev. Stats. (Sayles'). Article 3196, Revised Statutes, further provides: "Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable adverse possession shall be held to have full title, precluding all claims." Until the period of limitation, as fixed by the statute, has expired, under the adverse possession, the owner of the real title may dispossess the occupant by suit; or if the occupant abandons his possession, he will have acquired no title or interest, either legal or equitable, in the land. Until he has acquired title by adverse holding for the full period of time prescribed in the statute, his possession is wrongful, and in contemplation of law he is a trespasser. At the time of the death of the wife, she and the husband could have been dispossessed by suit; or had they given up possession, they could not have acquired title, even against one who had entered without shadow of title. They had no title or interest in the land at that time which the law recognizes—their holding had been wrongful; they were trespassers. Then if the wife had no interest in the land, legal or equitable, in contemplation of law, none could be cast upon her heirs by descent. We have not been cited to any case which decides this question, and are not aware of any decision of our Supreme Court upon it. There are many cases upon the general features of limitation titles in which are discussed and announced general principles which we have sought to correctly apply to the particular question under consideration. See Craig v. Cartwright, 65 Texas, 421; Charle v. Saffold, 13 Texas, 112; Akin v. Jefferson, 65 Texas, 145. Also Walters v. Jewett, 28 Texas, 200; Webb v. Webb, 15 Texas, 276.

Upon the issue of title, therefore, we are of the opinion that the trial court erred in holding that the defendants were entitled to one-half the land as the community interest of their grandmother.

The court below found that the rental value of the land was $125 per year, and that appellees had occupied same since January 1, 1891. This suit was filed January 4, 1892. Appellant is entitled to judgment also for his rents. Rev. Stats., art. 4809. The pleadings of plaintiff only claimed $100 per year as rents. The judgment of the court below will be reversed, and here rendered for appellant for the entire tract of land, and for rents for the years 1891 and 1892, at $100 per annum. It is accordingly so ordered.

*Reversed and rendered.*

Delivered June 6, 1894.