## SAUVAGE v. WAUHOP.†

(Court of Civil Appeals of Texas. Texarkana. Jan. 2, 1912. Rehearing Denied Jan. 11, 1912.)

1. HUSBAND AND WIFE (§§ 251, 262*)—SEPARATE AND COMMUNITY PROPERTY.

An interest in real estate inherited by a man is his separate property; but an interest purchased during his marriage is presumptively community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 894, 913, 914; Dec. Dig. §§ 251, 262.*]

2. JUDGMENT (§ 747*)—CONCLUSIVENESS.

A judgment, in trespass to try title, that defendant go hence without day, and recover his costs, merely denies a recovery to plaintiff, and does not vest any title in defendant, and is not sustainable as a muniment of title in defendant or those claiming under him.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1284–1296; Dec. Dig. § 747.*]

3. PUBLIC LANDS (§ 178*) — CONDITIONAL CERTIFICATES—SALES—VALIDITY.

Under Paschal's Dig. art. 4167, invalidating sales of land under conditional certificates, a sale of land under a conditional certificate

passes no title, legal or equitable, to the purchaser.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 581; Dec. Dig. § 178.*]

4. HUSBAND AND WIFE (§ 249*)—COMMUNITY PROPERTY—TITLE TO PROPERTY ACQUIRED BY ADVERSE POSSESSION—"ACQUIRED"—"CLAIM"—"OWNED OR CLAIMED."

Under Rev. St. 1895, arts. 2967, 2968, declaring that all property of the husband "owned or claimed" by him before marriage, and that "acquired" afterwards by gift, devise, or descent, shall be his separate property, and all property "acquired" by the husband or wife during the marriage, except that "acquired" by gift, devise, or descent, shall be the common property of the husband and wife, ownership resting in adverse possession for 10 years, existing in part before marriage and in part after marriage, is community property; the word "acquired" denoting all property coming to husband or wife during coverture by title, other than by gift, devise, or descent; and the word "claim," when applied to land, importing a legal or equitable right to the land; and the words "owned or claimed" signifying a legal or equitable ownership, or legal or equitable right to demand the land.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 887, 889–892; Dec. Dig. § 249.*

For other definitions, see Words and Phrases, vol. 1, pp. 112–114; vol. 8, p. 7562; vol. 2, pp. 1202–1211; vol. 8, p. 7604; vol. 6, pp. 5130, 5131; vol. 8, p. 7743.]

5. HUSBAND AND WIFE (§ 249*)—COMMUNITY PROPERTY—ACQUISITION OF TITLE.

The rule that a title when perfected, relates back to and takes effect from the time of its origin, and that the status of property, as separate or community, is determined by the character of the right in which it had its inception, does not apply where a claim to property rests on adverse possession, partly before and partly during marriage, but applies only where the right to the land is referred, in the first instance, to some legal or equitable claim before marriage.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 887, 889–892; Dec. Dig. § 249.*]

6. WILLS (§ 782*)—CONSTRUCTION—ELECTION—"MY PROPERTY."

Testator gave all "my" furniture and stock and the farm on which "I now reside" to his wife for life, with remainder over, and directed that all legacies should be paid out of "my" estate. The residuary clause purported to pass only "my" property. Held, that the will disposed only of testator's separate property, and did not purport to dispose of community property, so as to require the wife to elect whether to take under the will or her own property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2018–2033; Dec. Dig. § 782.*

For other definitions, see Words and Phrases, vol. 5, pp. 4652–4654; vol. 8, pp. 7727, 7728.]

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Action by W. A. Wauhop against Kate D. Sauvage. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The appellant brought the suit of trespass to try title and for partition of 213 acres of the C. A. Ballard survey and 219 acres of the John Bartley survey in Red River county. The two surveys are contiguous, as are the lands in suit. It was alleged that the lands were community property of Mary J. Wauhop and John W. Wauhop, both deceased. Appellant claims a one-half undivided interest as sister and sole surviving heir of Mary J. Wauhop. It was proven that she was the only heir. Appellant also sues to recover rents and the value of certain personal property alleged to have been converted and appropriated by the appellee, which either belonged to the community, or was separate property of Mary J. Wauhop. The appellee is the proven legally adopted heir of John W. Wauhop, but not the legally adopted heir of Mary J. Wauhop, and claims as devisee and sole heir under him, that the real estate was the separate property of John W. Wauhop. He further answered that John W. Wauhop died testate, and that Mary J. Wauhop was named as one of the beneficiaries and as executrix of the will, and if there was community realty that the will disposed of his separate property, as well as the community real and personal property of himself and Mary J. Wauhop, and that Mary J. Wauhop elected to claim under the will, and received benefits therefrom that she would not have received. John W. Wauhop made a will, and it was probated and later referred to. He died in September, 1903. Mary J. Wauhop died intestate October 21, 1907. The cause was submitted to the jury on certain special issues. The jury findings were that the Ballard land was the separate property of John W. Wauhop, and that Mary J. Wauhop elected to take under the terms of the will. The court made the finding that the Bartley land was partly separate and partly community property. A judgment was entered for appellee, except for the value of the crop of 1907, which was adjudged to belong to appellant as heir of Mrs. Wauhop.

Lennox & Lennox, for appellant. Chambers & Black and A. P. Dohoney, for appellee.

LEVY, J. (after stating the facts as above). There is mainly involved here the controversy between the parties, first, as to the determination of whether all the land in suit was vested in the separate estate of John W. Wauhop, or partly the community of himself and wife; second, the proper legal construction that should be given the will of John W. Wauhop, and whether Mrs. Wauhop was put upon election and did elect to take under the will. There being no evidence of the character of the personalty, other than the land note of Chapman, it must here be presumed to have been the community property, and this is in effect admitted in the briefs. These questions are presented by proper assignments of error. One of the tracts in suit is the C. A. Ballard survey, and the other is the John Bartley survey.

While the surveys are here mentioned, nevertheless in passing the fact is borne in mind that since the marriage of John W. Wauhop the original acreage of the surveys was reduced by sales by him to the acreage in suit. In order to constitute both surveys of land in suit the separate property of John W. Wauhop, the appellee first relies upon a deed from Bartley M. Ballard to James W. Wauhop, father of John W. Wauhop, dated September 23, 1843. The deed recites the consideration as "$1,800.00 to me in hand paid," and in words conveys "1,280 acres of land situated in Red River county about five miles N. E. from Clarksville, described as follows: [Then follow calls and distances]." After the signature to the deed follows: "And the said B. M. Ballard furthermore obligates himself to give the said Wauhop peaceable possession of said premises on or before the 1st day of January next." The field notes only describe the Bartley survey, it is admitted, and there were not 1,280 acres in such survey. Under and by virtue of an unconditional certificate for 1,280 acres, issued in 1841 to John Bartley, there was a location and survey of 600 acres of land in Red River county, which is the survey in suit. As the deed to "1,280 acres" admittedly does not embrace the Ballard survey, then there was no ambiguity in the description, and its legal effect was to pass title only to so much land as was contained in the specific tract of land therein described by metes and bounds, and the same could not be enlarged and extended, so as to embrace an adjoining survey which was in no wise mentioned under the terms of the instrument as a part of the conveyance. So the two tracts will have to be here traced separately to determine the question of separate or community ownership by John W. Wauhop. The Bartley survey is first considered.

[1] John Bartley, it appears, made sale and transfer of his unconditional certificate to W. T. Montgomery and Bartley M. Ballard October 6, 1841. The location and survey of the 600 acres, however, appear not to have been made until September 11, 1855. The patent issued to the heirs of W. T. Montgomery and B. M. Ballard, assignees of John Bartley, for the tract February 22, 1870. No deed of sale appears by W. T. Montgomery to any one, and title to his one-half interest would appear outstanding, unless acquired by Wauhop by limitation. James W. Wauhop, the grantee in the deed mentioned, died in the year 1849—the exact date not being shown—but prior to November 26th. He left surviving him as only heirs the three children, John W., Wm. A., and Sarah. Wm. A. Wauhop died without issue in the war between the states. John W. Wauhop was married to Mary J. Wauhop, sister of appellant, on September 16, 1861. On February 27, 1867, Sarah Wauhop, sister of John W., joined by her husband,

executed a deed to John W. Wauhop, conveying to him her undivided half interest in the Bartley land; the deed reciting "$2.50 per acre for the whole number of acres ascertained and found to be in the survey." Under these facts, it must be said that John W. Wauhop, by inheritance, got from his father a one-third interest in such title as the father had, which was the one-half undivided interest of B. M. Ballard, and later inherited one-half of the third interest of his brother William. After his marriage, John W. Wauhop then acquired the interest of his sister, and this would be presumed to be community. The outstanding interest of Montgomery, if acquired, must in the record here rest upon limitation. That such interest of Montgomery could not have been acquired by James Wauhop by limitation in his lifetime is manifest, because he died in 1849, and the certificate was never located and the land surveyed until September 11, 1855. So John W. Wauhop could not be held to have inherited from his father a completed limitation title of the Montgomery interest. It appears, therefore, furthermore that John Wauhop's claim to the half interest of Montgomery must rest in bare adverse possession begun by him, but not completed, before his marriage. As to whether this character of claim would be sufficient to constitute that interest separate property is later discussed, and decided to the contrary. It follows, as to the Bartley survey, that one-fourth interest is shown to be separate property, by inheritance, of John W. Wauhop, one-half community by limitation title, and the sister's purchased interest of one-fourth, presumed to be community.

The C. A. Ballard survey is next considered. A conditional certificate for 640 acres was issued to C. A. Ballard in 1842. An unconditional certificate was issued to him, by virtue of the conditional certificate, on February 3, 1845. On February 3, 1845, C. A. Ballard made sale and transfer of the unconditional certificate to B. M. Ballard. On September 10, 1855, there was a location and survey for B. M. Ballard of 613 acres of land in Red River county, which is this survey in suit, under and by virtue of the unconditional certificate. Patent issued to B. M. Ballard, assignee of C. A. Ballard, on October 4, 1858. There is no evidence in the record to show that John W. Wauhop, or his father before him, had any deed or paper title to the Ballard survey. But to show that the title vested in the separate estate appellee relies, first, on a judgment of the district court of Red River county as muniment of title connecting to the deed before mentioned of B. M. Ballard for "1,280 acres"; and, second, upon title by statute of limitation of 10 years. As in proper connection here, the question of limitation is taken up first. It appears that the unconditional certificate was issued in February, 1845, but there was no location and survey under it

until September, 1855. It does not appear that there was location under the conditional certificate of 1842. So under the facts, and assuming that James Wauhop, the father, commenced his occupancy in 1844, it is manifest that he had. no interest or right by reason of mere adverse possession under limitation laws. that would descend to John W. Wauhop, one of his heirs, because it was in this record merely, in legal effect, occupancy of vacant, unappropriated public domain until the location and survey of the unconditional certificate in 1855, which was six years after his death. This reduces the question of title by limitation to adverse possession by John Wauhop before marriage, which, in the most favorable light to him, could not have begun before 1855, which was considerably less than 10 years before his marriage. As to whether the fact that limitation began to run before marriage would constitute it separate property is later discussed.

[2] The judgment relied on as muniment of title is next considered. In September, 1870, N. W. and W. B. Guinne, claiming to own the Ballard survey in fee-simple title, sued Ballard Bledsoe in trespass to try title. It appears that on December 27, 1869, John W. Wauhop and his wife deeded the survey to Ballard Bledsoe under warranty deed. Later on, however, it appears that Bledsoe, being unable to pay out the land, reconveyed it to Wauhop. As a warrantor, John W. Wauhop made himself a party to the suit, and answered, first, that B. M. Ballard, in 1843, sold to James W. Wauhop "1,280 acres" of land, and that he paid for and was put in immediate possession of the same, and that there had been peaceable and uninterrupted possession of the same from that date to the date of the suit; that the deed of that date for 1,280 acres was given as evidence of the purchase of the same, but by oversight, inadvertence, and mistake the metes and bounds of the Ballard survey were omitted, and those only of the tracts purchased were described therein; second, the 10-year statute of limitation was pleaded. It appeared that B. M. Ballard had made a warranty deed to the Guinnes for the survey on June 20, 1870. The judgment in the case was simply a general judgment to the effect that the defendant "go hence without day and recover his costs." Mrs. Wauhop was not a party to the suit; and neither she nor those claiming under her are concluded by the judgment as to her rights. The effect of the judgment was simply to deny the plaintiffs therein a recovery. It did not vest any title in Wauhop; it was merely a general denial of any recovery to plaintiffs. It could not, therefore, be sustained as a muniment of title back to the deed of "1,280 acres," before mentioned, because it undertook to vest none, and neither did the pleading ask it to be done. Neither could it be said that there was evidence, if

the proceedings in the suit were admissible as such evidence, going to show that James Wauhop had an equitable title to this survey, because he purchased and paid for the land, and was put in possession of the same.

[3] At the time such claim would be made, a conditional certificate only existed as to this survey. Under the law of January 4, 1839, in force at the time, there was provided, as to conditional certificates, "that no sale of said claim to land by the individual entitled to the same of this government shall be valid in law and binding upon the person ruling the same until an unconditional deed shall be obtained by the grantee for said land." Paschal's Digest, art. 4167. A sale was against the policy of the law. Smith v. Johnson, 8 Tex. 423; Turner v. Hart, 10 Tex. 442. So no equity of title could be rested in such purchase, if purchased. It is true that in the case of Hart, supra, it was in effect stated that the owner of the conditional certificate might himself, in his lifetime, ratify the invalid sale after the issuance of the unconditional certificate. But here the evidence is conclusive that the owner of the conditional certificate of this survey never sold nor attempted to sell to James Wauhop. And the evidence is further conclusive that the owner of this conditional certificate never sold nor attempted to sell the same to B. M. Ballard, under whom James Wauhop makes the claim of such purchase. B. M. Ballard, under the conclusive written evidence, only purchased the unconditional certificate, which was more than a year after the date of the insisted purchase of the land by Wauhop, senior. Conclusively there was neither purchase by Wauhop from C. A. Ballard, nor question of ratification as to sale of this survey by Ballard, presented. The whole proceedings in that suit were inadmissible as evidence, we think, and should have been excluded. Therefore the whole title to the Ballard survey, as well as one-half of the Bartley survey before mentioned, was acquired in the proof by the statute of limitation of 10 years adverse possession, beginning to run, in the evidence most favorable to appellee, more than four and less than five years before the marriage of John W. Wauhop, but not complete until some time after his marriage. John Wauhop lived on the land before marriage, and he and his wife resided on it after marriage.

[4] Mere adverse possession is the sole basis for the ownership, and it does not otherwise rest in any form of contract, conveyance, bond, or right. Article 2967 of the Revised Civil Statutes provides: "All property, both real and personal, of the husband, owned or claimed by him before marriage, that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired, shall be his separate property." Article 2968 provides: "All property acquired by either husband or wife during the marriage, except that which is ac-

quired by gift, devise or descent, shall be deemed the common property of the husband and wife." So from the statutes defining their separate and community estates, the property gets its character as belonging separately to the husband or wife, or in common to both. If the property is "owned or claimed" before marriage, it is the separate property of the spouse owning or claiming same; if it is "acquired" by either after coverture, it is in common to both. The word "acquired" in its context was not intended, we think, to be used in the limited sense of actually purchased, but is used in the broad sense to denote all property which might come to the husband or wife during coverture by title, other than by "gift, devise or descent." It is not doubted that merely holding adverse possession of some third person's land does not give title to the land to such naked trespass until the limitation period has run. Bishop v. Lusk, 8 Tex. Civ. App. 30, 27 S. W. 306. Consequently, as the title here was matured or gotten during coverture, it should properly be classed under the statute as property "acquired" during the marriage, and community, unless it would become the separate property of the husband because "claimed" by him before marriage. Ordinarily a "claim" is the means by or through which the claimant obtains the possession or enjoyment of the thing sought. This implies some obligation or liability in favor of the claimant. When applied to land, the word "claimed" imports some legal or equitable right to the land, existent to the claimant. It is quite suggestive that the word "claim" is construed as synonymous with "cause of action." The words "owned or claimed" were manifestly used in the statute, we think, to signify a legal or equitable ownership or legal or equitable right of demand of the land. The statute speaks, as it were, of the husband as the "owner" or "claimant" of the land before marriage. Having some legal or equitable right existing to him to demand the land would constitute him a "claimant" to the land, within the sense of the statute. Hence, if the particular spouse "owned" or had "a cause of action" for the land, it is separate property. To what would a naked trespasser refer his "claim" to the land before the period of limitation has run? Before the expiration of the prescribed period, he has no legal or equitable rights or demand against the owner. It is only because of prior possession, not ownership or claim of title, that he can prevail against subsequent trespassers. It is true that such trespasser could be said to have "claimed," in a sense, the land, as against the wife, before marriage. But it is not by the mere agreement or assertion of the parties, but by the statute, that the property gets its character as belonging separately to the husband, or in common to husband and wife. To extend the word "claimed" to include merely an as-

sertion of right, which is not further founded in a legal or equitable right of demand, but based on a wrong against the true owner, would not be within the sense of the statute; for, failing in legal or equitable right existent to demand the land, there would be no "claim" to the land shown. So we think it must be held that ownership resting on pure adverse possession for 10 years, as here, extending partly through coverture, should be, under the statutes, classed as community property. The following cases support the ruling: Bishop v. Lusk, supra; Hurley v. Lockett, 72 Tex. 262, 12 S. W. 212; Speer on Married Women, § 197. In the case of Webb v. Webb, 15 Tex. 275, the property was selected by the husband before the wife's death, but title was not extended until after her death; and because there was no title during her life it was held not community. The case of Railway Co. v. Speights, 59 S. W. 572, cannot be regarded as authority for a contrary holding to the ruling here. It was decided by the Supreme Court, on writ of error, in that case (94 Tex. 350, 60 S. W. 659), that the statute of limitation was so interrupted as not to give adverse possession at all. So that the question of whether the land there was community or separate property was not a question arising at all in the case mentioned for ruling by the first court.

[5] It is true that it is a general principle that a title, when perfected, relates back and takes effect from the time of its origin, and that its status, as separate or community, is determined by the character of the right in which it had its inception. The following cases apply that principle: Welder v. Lambert, 91 Tex. 510, 44 S. W. 281; Alford et al. v. Whitesides, 41 Tex. Civ. App. 436, 91 S. W. 639; Creamer v. Briscoe, 101 Tex. 490, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869, and others of like facts. But none of these cases in which that principle was applied rested, for claim before marriage, merely on "adverse possession," as here. Their right to the land was referred, in the first instance, to some legal or equitable claim appearing before marriage. And these cases fully support the holding here made by us that, before it could be said that the husband "claimed" the property, in the sense of the statute, there must appear some legal or equitable right in him before marriage to refer the claim to. In Welder v. Lambert, supra, a concession was made by the government, in consideration of a stipulation to introduce colonists into the state, by which the parties were given the right to a premium in lands to be selected and granted to them, upon their compliance with the agreement. Because it was a fixed contract right which attached to the grant subsequently extended, the heirs of Mrs. Sanches were held to have a community interest. It was "claimed" during her coverture, because it was founded in a legal demand or right, not pure adverse

possession. In Alford v. Whitesides, supra, Mrs. Williams, before her marriage, was the owner by transfer to her of the land certificate, and her claim to the land was founded on this. It was because she had acquired an equitable title to the land by the transfer of the certificate to her that the court was able to say that it was her separate property, because "claimed" by her before marriage. The inception of the title did not, as here, rest alone in pure adverse possession. In Creamer v. Briscoe, the husband and wife settled on land to acquire it as a homestead donation, and did everything required by law in that respect, except to complete the three years occupancy. There the claim was under a legal right, good against the world, except the state, until the title was extended by occupancy. It was because the court was able to refer the title, when extended, to a legal right conferred by law, by which it had its inception, that it was held that the land could be "claimed" as community of the first wife.

[6] The next question presented is as to the proper legal construction to be given the will of John W. Wauhop. The will bequeaths to his wife for life, with remainder to appellee, "all my furniture, my stock, and the farm upon which I now reside, situated in the county of Red River and state of Texas, together with all notes on hand, as well as monies on hand and in bank." The point is as to whether the testator intended by the language used to dispose of both his and his wife's interest in the property. If so, then the wife, in this case, was put to an election. Considering the language of the will in its entirety, the intention of the testator was, we think, to pass only such interest as he had in the property, and not the interest of the wife. In this view, she was not put to an election. In the introductory clause of the will, which can be referred to for the meaning to include property in the residuary clause, the testator says, "I direct that the legacies hereinafter given be paid out of my estate." The only legacy is as above mentioned. The fourth paragraph is consistent with the introductory clause, and is practically an express recognition of the wife's right. By using the words "paid out of my estate," the testator could only reasonably have meant to be understood as saying that the property, real and personal, disposed of by him should be confined to his interest or his part of the same. The phrase "paid out of my estate," when applied to property, would signify that the property was to be taken or carved out of only the particular portion or right belonging to the testator. The language of the residuary clause begins to describe the property disposed of with the word "my," which is a word expressive of restriction, to the extent of the interest intended to be dis-

posed of, where there are several joint interests. The words "the farm upon which I now reside" are consistent with the gathered intention to dispose of only the interest owned by the testator in the property devised. The latter words are only ambiguous as to the quantity of land intended to be disposed of, and not the interest of the testator therein. It should, in the facts, we think, extend to his interest in all the land, as evidently that was meant.

Therefore, from the conclusions thus reached the judgment must be reversed. After a careful consideration of the record, we have concluded that the cause should be remanded, because there remains in the record a question of fact as to whether the consideration for the deed from Mrs. Tomlin to Wauhop was in exchange for separate land. There is some evidence in the record to that effect, but which we suggest is slight, to overcome the presumption of community purchase. Further evidence may be obtained. And there is an issue as to all the personalty in suit that we cannot undertake by the record to finally pass on.

The judgment is reversed, and the cause remanded.