ESTATE OF THOMAS SPRUANCE, DECEASED, ALFRED McKNIGHT, AD-MINISTRATOR, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 94784, 94785, 94820, 94821, 94786.

Promulgated January 3, 1941.

*Harry C. Weeks, Esq.*, and *R. B. Cannon, Esq.*, for the petitioner, Estate of Thomas Spruance, Alfred McKnight, Administrator.

*Warren Scarborough, Esq.*, for the petitioner, Hortense Spruance.

*D. D. Smith, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Alfred McKnight, administrator of the Estate of Thomas Spruance; Alfred McKnight, administrator of the Estate of Thomas Spruance and Mrs. Hortense Spruance, surviving spouse; Mrs. Hortense Spruance.

222

224

OPINION.

ARUNDELL: The issues presented here for decision are threefold: (1) Whether Thomas Spruance realized taxable income from the misapplication, misappropriation, and embezzlement of the funds of the First State Bank of Arlington; (2) whether, if the first be answered in the affirmative, such income may be regarded as community income and taxed one-half to petitioner Hortense Spruance; and (3) whether stock owned by petitioners in the bank became worthless in 1937.

On the first question petitioners argue that funds acquired through embezzlement are not income to the embezzler, since he never has lawful possession of them and since, further, simultaneously with the misappropriation he comes under an obligation to restore the amounts embezzled which offsets and nullifies the realization of income. See *Commissioner* v. *Turney*, 82 Fed. (2d) 661. Cf. *National City Bank of New York* v. *Helvering*, 98 Fed. (2d) 93. The respondent cites as authority for his opposed view G. C. M. 16572, XV-1 C. B. 82, wherein it is said in part:

The United States Supreme Court has also defined income as "gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets." (*Eisner* v. *Macomber*, 252 U. S. 189, T. D. 2010, C. B. 25.) This definition of income is likewise sufficiently all-inclusive to comprehend embezzled property. The proceeds of an embezzlement may surely be regarded as a *gain*, and if the court's requirement that gain must be derived from labor may be taken to mean that the gain must result from some expenditure of human energy, then it would seem that the proceeds of an embezzlement are derived from labor.

Although there are no decisions holding directly that the proceeds of an embezzlement constitute taxable income, yet, in view of the foregoing, it may properly be said that there is no controlling authority to the contrary.* * *

The issue which is thus framed is a difficult one and authorities on which to rely in reaching a decision are meager. However, various considerations, the force of which is felt here, have received consideration elsewhere. The illegality of the acts by which Spruance acquired the funds may not at the outset prevent their taxation to him. See *United States* v. *Sullivan*, 274 U. S. 259; *Chadick* v. *United States*, 77 Fed. (2d) 961; certiorari denied, 296 U. S. 609; *Christian H. Droge*, 35 B. T. A. 829. The statute seeks to reach income with impartial hands and to spread equally the burden of taxation. The aims of law enforcement are not disserved by requiring the wrongdoer to yield up any part of his ill-gotten revenue.

It it apparent, however, that there is some weight in petitioners' argument that no income is realized from the possesssion of funds or other assets which belong to another. There is persuasive weight to it when the ownership of these funds is acknowledged and their repayment or payment-over is to be made in due course. See *Commissioner* v. *Turney, supra.* On the other hand, it is plain that assets rightfully belonging to another which a taxpayer has applied completely to his own use or disposed of for his own benefit, whether with or without color of legal right, differ very little in the realistic view from income. See *National City Bank of New York* v. *Helvering*, 98 Fed. (2d) 93, 96. In this situation it can count for little that the wrongdoer had no title to the funds which he received or that their restoration might through legal action be compelled, see *Board* v. *Commissioner*, 51 Fed. (2d) 73; *Barker* v. *Magruder*, 95 Fed. (2d) 122. And this is particularly so where the taxpayer has through insolvency rendered himself unable to make the restitution which in some instances might be demanded.

The case before us must be controlled by these principles. Although the evidence is not entirely clear that Spruance put to his own use the funds which he misapplied, no question is raised on the briefs as to this point and the approval by the executor of the claim made against his estate for the misappropriated assets must consti-. tute for our purposes an admission that they were so used. In our view, Spruance appropriated and applied to his own use the funds and assets belonging to the bank. He had, it is true, neither any claim to title nor any basis for retaining them as his property, but what is more important here is that he made use of them as his own property, and, after having received benefits from them which differ not at all from those he would have had from rightful income, he is unable to make any restoration. His death plus the insolvency of his estate render it unlikely that any restitution will

ever be effected. We think in these circumstances that Spruance and his estate are estopped to deny that he received income in the amount of the misappropriations. See *United States* v. *Wampler*, 5 Fed. Supp. 796; see also *National City Bank of New York* v. *Helvering*, *supra*.

No great significance can, in this situation, be attached to the petitioners' argument that since Spruance had neither title to the misappropriated assets nor the right to retain them they can not be considered income to him. Contentions of a similar nature were aptly answered by Judge Learned Hand in *National City Bank of New York* v. *Helvering*, *supra*. There the deceased taxpayer, for whom the bank functioned as executor, during his life received certain sums as secret bonuses from dealings in contracts with the Prairie Oil & Gas Co. of which he was president. When the Commissioner sought to tax these amounts as income it was set up that they could not constitute income to him as they rightfully belonged to the corporation and were not his lawful property. In passing over this argument Judge Hand, speaking for the court there, said:

* * * [the funds] were property of the Prairie Oil Company in the sense that they could have reclaimed them: they were not therefore like the earnings of an illicit liquor seller which belong to him, however acquired. [Citations omitted.] But there are several cases in which persons have been taxed upon property which could be recovered from them. For example, the lender upon usurious interest—if on an accrual basis—must include his apparent profit in his return * * *. Although taxes are public duties attached to the ownership of property, the state should be able to exact their performance without being compelled to take sides in private controversies. Possession is in general prima facie evidence of ownership and is perhaps indeed the source of the concept, itself, though the time is long past when it was synonymous with it. It would be intolerable that the tax must be assessed against both the putative tortfeasor and the claimant; collection of the revenue cannot be delayed nor should the treasury be compelled to decide when a possessor's claims are without legal warrant.

In the present situation this answer to petitioner's argument is even more compelling when it can be shown that even though restitution be ordered, as indeed it has been in part, the estate is inadequate to make the restoration required. We, therefore, hold that as to the estate of Thomas Spruance the misappropriated funds must be considered taxable income. We think, however, that the Commissioner erred in not making allowance for the deposit of the Universal Motor Co. in the amount of $36,968.50. This sum represents funds not used by Spruance for his benefit and moreover already reclaimed by the bank and, therefore, the income taxed to his estate should be reduced by this amount. As for the $25,000 paid on the guaranty bond, no allowance should be made. This in no way reduces the amount received by Spruance but merely involves a substitution of claimants

through the subrogation of the insurance company to that portion of the bank's claims.

The reasoning by which we have held Spruance taxable does not compel us to hold petitioner Hortense Spruance taxable on one-half of the misappropriated funds. The evidence shows clearly that she received no benefit from the misappropriations of her husband. Her living expenses were met entirely out of her husband's salary and her home was built with funds received by devise. Indeed, the evidence shows that she was without any knowledge of her husband's wrongdoing until the time of his death. In such circumstances we think no theory of estoppel militating against the wrongdoer, cf. *United States* v. *Wampler, supra,* or against the recipient of the misappropriated assets can bar petitioner Hortense Spruance from showing that she has received no taxable income. In this case we think she has received none.

No part of the assets misappropriated by her husband may be taxed to Hortense Spruance unless under the laws of Texas these embezzled funds constitute community property. *Poe* v. *Sanborn,* 282 U. S. 101; *Hopkins* v. *Bacon,* 282 U. S. 122. The statutes of that state define community property as follows:

All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife * * *. [Article 4619, sec. 1, Revised Civil Statutes of Texas (Vernon's ed., 1936).]

The keystone term in that section—the word "acquired"—has been interpreted and applied by the courts of Texas in several varying situations. Under those cases, property is not "acquired" within the meaning of the community property laws by the mere possession of the property without some title or color of title in the possessor, *Bishop* v. *Lusk,* 8 Tex. Civ. App. 30; 27 S. W. 306; *Sauvage* v. *Wanhop,* 143 S. W. 259; and they hold that the adverse possession of land by husband or wife without color of title is no acquisition of such realty within the meaning of the community property statute. As a consequence, in the former case on the ripening of title after the wife's death it was held that no claim to the land might be asserted by her heirs based on the premise that it formed a part of the community.

From the cases noted and others, see *Gafford* v. *Foster,* 36 Tex. Civ. App. 56; 81 S. W. 62; *Cook* v. *Houston Oil Co. of Texas,* 154 S. W. 279, it may be drawn, we think, as a general principle that property is not "acquired" within the meaning of the community property laws until there is some legal title in the spouse making the acquisition.

The community property laws of Washington have received an interpretation in line with this general principle. In *Pappas* v.

*Taylor*, 193 Wash. 22; 244 Pac. 390, in a situation somewhat similar to that one before us now, property was transferred by a third party to one spouse with the understanding that she would hold it for him to enable the transferor to defraud his creditors and that she thereupon would reconvey it to him. It was held that the property so transferred did not become the community property of the transferee spouse and her husband, since no substantial title passed by the transfer.

The disposition of the present case must be governed by this principle. The bare possession by Spruance of the misappropriated funds without title was not sufficient to make of them community property. His application of these funds to his own use and benefit does not alter this result. Accordingly, the Commissioner's basis for taxing to Hortense Spruance one-half of the sums embezzled fails and his action in doing so must be reversed.

We are left with the question of the worthlessness of the stock of the First State Bank of Arlington. Neither petitioners nor respondent question that the stock was without value after the bank's closing in the month of April 1937. They differ as to the time at which it became worthless, the respondent claiming that it had no value at the beginning of the year 1937.

However, petitioners have produced convincing evidence to the contrary. In the year 1937 the events transpired which deprived the stock of its value—a shortage of $150,000 developed in the assets of the bank and was charged to its president; the bank ceased to do business and was placed in the hands of the State Commissioner of Banking. The occurrence of this series of events marks most effectively the time at which the bank stock owned by petitioners ceased to have any value. See *In re Hoffman*, 16 Fed. Supp. 391; affd., *Yocum* v. *Rothensies*, 87 Fed. (2d) 200; *Van Deusen* v. *Phillips*, 19 Fed. Supp. 492. Cf. *John H. Watson, Jr.*, 38 B. T. A. 1026. Up until that time the bank was a profitable going concern, a circumstance which gave market value to its stock regardless of the undisclosed shortage in assets which was revealed in the audit. Its stock sold at par and sometimes at a sum in excess of that figure during the years prior to 1936. Proof is made of a sale of the bank's stock in January of 1937 at a price above par and, although the purchaser was Thomas Spruance, the Commissioner does not question that this was a sale made in good faith. In this circumstance the market value as thus shown must be taken as cogent evidence that the stock was not valueless at that time. See *Frank C. Rand*, 40 B. T. A. 233.

In view of the whole evidence adduced on this point, the petitioners are sustained in their contention that the stock became worthless in the year 1937.

We are confronted then with the problem of determining the number of shares held by Spruance at the time of the bank's closing and their cost and of thus determining the extent of the loss. Petitioners have shown the following purchases at the following prices:

| Shares | Price |
|---|---|
| 49 | $5,580 |
| 20 | 1,500 |
| 40 | 5,000 |

Petitioners are entitled to deduction for loss in these amounts.

For the 46 shares which Spruance agreed to purchase from Frank McKnight, deceased, and Frank McKnight, Jr., we think the petitioners may deduct as a loss only the amount which was paid under the contract of purchase, or $800. No loss is allowable for the balance of $3,800 due on the purchase price until that amount has been paid. *Price* v. *Helvering*, 309 U. S. 409.

Petitioners are entitled to no loss deduction for the remaining 79 shares which stood in the name of Thomas Spruance at the time of the bank's closing, since they have not shown the cost or other basis of these shares. See *Forrester Box Co.*, 25 B. T. A. 128; *Girard Trust Co. et al., Administrators*, 32 B. T. A. 926.

*Decision will be entered under Rule 50.*