Inez Margaret Crawford v. Commissioner.
Crawford v. Commissioner
Docket No. 77880.
United States Tax Court
T.C. Memo 1961-224; 1961 Tax Ct. Memo LEXIS 124; 20 T.C.M. (CCH) 1113; T.C.M. (RIA) 61224; August 10, 1961
*124 1. Held, on the facts, respondent erred in including in petitioner's community property income one-half of amounts received by her husband from illegal sales of cattle and rental of pasture lands which he did not own. 2. Held, petitioner's failure to file income tax returns and declarations of estimated tax were not due to reasonable cause. 3. Held, the Tax Court has no authority to order respondent to credit to one taxpayer amounts of tax withheld on the income of another taxpayer or portions thereof. Sam G. Groom, Jr., Esq., Esperson Bldg., Houston, *125 Tex., for the petitioner. George Voss, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent has determined deficiencies in the income tax of petitioner and additions to tax for the years 1953 and 1954, as follows: Additions to Tax *
Sec.
Sec. 294
Sec. 294
Year
Deficiency
291(a)
(d)(1)(A)
(d)(2)
1953
$3,986.48
$996.62
$358.78
$239.19
1954
80.00
20.00 **
7.40
4.80
The deficiencies arise from respondent's determination that petitioner was the owner of one-half of certain community property income, an adjustment explained in the statutory notice, as follows: (a) It is determined that your share of taxable community property income was $13,496.84 for 1953 and $1,119.49 for 1954, computed as follows: Year 1953
Year 1954
Salary and bonus for A. P. George
$ 2,225.00
$1,288.98 *
Salary from the Superior Oil Company
950.00 *
Cattle sales to C. B. Johnson Live Stock Commission
Company
18,583.67
Cattle sales to J. B. Yelderman **
1,700.00
Rental income from J. B. Yelderman **
1,700.00
Less: Labor expenses
(200.00)
Total
$26,993.67
$2,238.98
One-half the community property income taxable to
husband, Joe Bingham Crawford
$13,496.83
$1,119.49
One-half the community property income taxable
to wife, Mrs. Inez Crawford
$13,496.84
$1,119.49
*126 Respondent concedes that the additions to tax under section 294(d)(2) were erroneously imposed. Petitioner concedes that she is taxable on one-half of the income received by her husband as salary and bonus during the years in issue from A. P. George and as salary from Superior Oil Company. These concessions will be given effect in computations under Rule 50. The questions presented are: (1) Whether respondent erred in determining that the proceeds of illegal sales of cattle and illegal rental of pasture received by petitioner's husband in 1953 constitute community property income, one-half of which is taxable to petitioner. (2) Whether petitioner's failure to file income tax returns and declarations of estimated tax for the years 1953 and 1954 was due to reasonable cause. (3) Whether petitioner is entitled to a credit of one-half of the income tax with-held by her husband's employer, Superior Oil Company, during 1954, and which has been refunded to him. Findings of Fact Some of the facts were stipulated and are incorporated herein by this reference. *127 Petitioner, an individual residing in Rosenberg, Texas, did not file individual Federal income tax returns or declarations of estimated tax for the years 1953 and 1954. Petitioner married Joe Bingham Crawford (hereinafter referred to as Crawford) in 1939, permanently separated from him in 1944, and was divorced from him in 1955. Crawford was employed on a full-time basis by A. P. George during 1953 and part of 1954 as manager of a cattle ranch owned by George and the George Foundation. For part of 1954 Crawford was employed by the Superior Oil Company. For the year 1953 Crawford received a salary and bonus from George in the total amount of $2,225 and for 1954, a salary in the amount of $950. For 1954, Crawford also received a salary from Superior Oil Company in the amount of $1,288.98. Superior Oil Company withheld tax from Crawford's salary in the amount of $126.50, which amount was refunded to Crawford in 1955. Crawford filed no income tax return for the year 1953. As ranch foreman for the George Ranch, Crawford was in charge of and controlled the feeding and handling of all cattle on the ranch. He aided George in the selection of animals for sale, and directed the loading *128 of animals for transportation to stockyards for sale through a commission broker. Crawford had no authority to sell for his own account animals belonging to A. P. George or the George Foundation. The George Ranch was in two parts. The main part of the ranch was a few miles from Richmond, Texas. Most of the cattle and ranching activities were centered on the main ranch. Another part of the George operation, known as the Long Point Ranch, was located about eight miles from the main ranch. Crawford was supplied a home on the Long Point Ranch by George, and was expected to reside there. During 1953, Crawford sold cattle through the C. B. Johnson Live Stock Commission Company located in Houston, Texas. This was the commission broker normally employed by George. Crawford received and negotiated checks from the commission broker for the net price of the cattle sold. The dates in 1953, number of animals sold, gross price, freight and other charges, and net prices received by Crawford on such sales were as follows: Freight
Other
Date
Animals Sold
Gross Price
Charge
Charges *
Net Price
Feb. 18
40 cows, 2 steers
$ 5,018.01
$ 69.80
$ 80.96
$ 4,867.25
Apr. 29
41 cows, 1 yearling, 11 calves
3,507.90
74.07
95.54
3,338.29
May 6
1 dead cow, 1 dead calf
3.50
3.50
June 3
20 cows
1,395.75
35.23
39.60
1,320.92
Aug. 20
39 cows, 18 calves
3,555.86
77.74
98.56
3,379.56
Oct. 21
59 cows
5,907.89
120.82
112.92
5,674.15
$19,388.91
$377.66
$427.58
$18,583.67
*129 The normal freight charge for hauling cattle from the main George Ranch to the stockyards of the C. B. Johnson Live Stock Commission Company in Houston, Texas, was 18 cents per cwt. The freight charge for the hauling of cattle which Crawford sold was 20 cents per cwt. for all but one shipment which was computed at 19 cents per cwt. The Long Point Ranch was approximately eight miles further removed from Houston than the main ranch. During 1953, Crawford sold cattle to J. D. Yelderman for a total consideration of $4,685. Yelderman made payment for the cattle by eight checks made payable to and endorsed by Crawford during 1953. Some of the cattle sold were picked up by Yelderman at the Long Point Ranch. Early in 1954, W. C. Minkwitz, business manager for the George Ranch, discovered a substantial shortage in the inventory of cattle at the Long Point Ranch. Thereafter Crawford's employment by George was terminated, and Crawford left the vicinity. Simultaneously, the George Ranch stopped shipping cattle for sale through the C. B. Johnson Live Stock Commission Company and has never resumed such shipments. A. P. George died *130 in 1955. The cattle sold by Crawford during 1953 were the property of A. P. George and/or the George Foundation. Neither A. P. George nor the George Foundation received any of the proceeds of such sales. During 1953, Crawford received as pasture rent four checks totaling $1,700 from J. D. Yelderman. The checks were made payable to and endorsed by Crawford. During 1953 Crawford did not own or hold under lease any pasture land. Petitioner's failure to file income tax returns and declarations of estimated tax for the years 1953 and 1954 was not due to reasonable cause. Opinion BLACK, Judge: The first issue presented is whether respondent erred in including in petitioner's taxable income for the year 1953, a one-half community interest in the proceeds of sales of cattle and lease of pasture which petitioner's husband received during that year. The parties are not in any basic disagreement as to whether illegal income of a Texas husband is taxable to the wife, she having had no part in procuring it. That question was resolved favorably to the wife in Estate of Thomas Spruance, 43 B.T.A. 221 (1941), reversed on other grounds sub nom. McKnight v. Commissioner, 127 F. 2d 572 *131 (C.A. 5, 1942). The question here involved is the factual one of whether petitioner's husband did in fact receive the amounts as illegal income, as to which no community property interest vested in petitioner. The record, we think, establishes that petitioner's husband sold during 1953 a substantial number of cattle which belonged to his employer, without authority so to do and kept the money received from the sales and did not account for it to his employer. Such a course of conduct is illegal in Texas. Vernon's Texas Penal Code, Art. 1534 (Embezzlement) and Art. 1441 (Theft of Cattle or Hog); Heidenreich v. State, 168 S.W. 2d 254 (Cr. App. Tex. 1943). We hold, therefore, that the proceeds of cattle sales made by petitioner's husband during 1953 constituted illegal income, as to which no community interest vested in petitioner under the laws of Texas. As to the amounts which petitioner's husband received as pasture rent during 1953, we are satisfied that he neither owned nor held under lease any pasture lands. The land he leased out was evidently his employer's at the Long Point Ranch. Consequently, any amounts which he received as pasture rent were received as the *132 result of the unlawful leasing of pasture lands belonging to his employer. The amounts would not constitute income to petitioner. Estate of Thomas Spruance, supra.We hold, therefore, that respondent erred in including a one-half interest in these sums in petitioner's income for 1953. Respondent has determined additions to tax under section 291(a) of the 1939 Code and section 6651 of the 1954 Code for failure to file a return for 1953 and 1954, respectively; and an addition to tax under section 291(d)(1)(A) of the 1939 Code for failure to file a declaration of estimated tax for 1953 and 1954. Petitioner concedes that salaries received by her husband and totaling $2,225 and $2,238.98 in 1953 and 1954, respectively, constituted community property income, one-half of which is taxable to her. Although she testified that she did not know that she was taxable on the income of her husband from whom she was separated but not then divorced, the record fails to show that she made any attempt to discover whether she was so taxable. Such circumstances do not constitute reasonable cause for failing to file. Cf. Southeastern Finance Co., 4 T.C. 1069 (1945); Michael Downs, 7 T.C. 1053 (1946). *133 An argument is advanced on brief by petitioner that because petitioner and Crawford effected an oral division of their community property upon their separation, our decision in Elsie SoRelle, 22 T.C. 459 (1954), made it reasonable for petitioner to believe she did not have to report one-half of Crawford's income. Such an argument fails because petitioner's allegation of the dissolution of the marital community contained in her petition was denied by respondent, and no evidence as to such division was offered. We do not know what agreement they had, if any, at the time of separation. We hold, therefore, that respondent did not err in determining additions to tax for failure to file income tax returns and for failure to file declarations of estimated tax for 1953 and 1954. These additions to tax will, of course, be recomputed under Rule 50. The final issue is presented by petitioner's claim that she is entitled to a credit of one-half of the amount withheld as tax from her husband's salary during 1954, despite the fact that the full amount of withheld tax was refunded to him. We have repeatedly held when a husband and wife file separate returns, we lack authority to order *134 "the Commissioner to credit one taxpayer's account with a refund due another taxpayer." Alexander Vayssie, 8 B.T.A. 587 (1927); H. B. Perine et al., 22 B.T.A. 201 (1931). Nothing in the present record eliminates the applicability of that rule. The principle enunciated in the above cases is applicable here, we think. We hold against petitioner on this assignment of error. Decision will be entered under Rule 50. Footnotes
*. Determined under Internal Revenue Code of 1939, unless otherwise indicated. ↩
**. Determined under section 6651 of the Internal Revenue Code of 1954↩.
*. These figures were erroneously reversed as to the source of the income. ↩
**. Referred to elsewhere as J. D. Yelderman.↩
*. Includes yardage, commission, and brand inspection.↩